United States Court of Appeals,

Fifth Circuit.

Nos. 93-4977, 93-4990.

Mark BUCHINE, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.

Karen C. BUCHINE, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.

May 9, 1994.

Appeal from a Decision of the United States Tax Court.

Before ALDISERT[*], REYNALDO G. GARZA and DUHÉ, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Mark and Karen Buchine appeal a decision from the United States Tax Court holding them liable for tax deficiencies. We find that the Tax Court did not go beyond its statutorily prescribed jurisdiction by applying the equitable principle of reformation. We further find that the Tax Court did not clearly err in finding that a written agreement existed between each of the Buchines and the IRS, and in finding that Karen Buchine was not an innocent spouse within the meaning of I.R.C. § 6013(e). Therefore, the decision of the Tax Court is AFFIRMED.

I. FACTS

Mark and Karen Buchine filed their 1981 tax return on July 21,

---

[*]Circuit Judge of the Third Circuit, sitting by designation.

1

1982.  The IRS, however, did not issue the notice of deficiency until September 7, 1989.

On September 17, 1984, the Commissioner of the IRS mailed the Buchines an original and one copy of Form 872-A (Special Consent to Extend the Time to Assess Tax).  The Form 872-A agreements executed by taxpayers and the IRS are known as open-ended "consents" because they extend indefinitely the Internal Revenue Code's section 6501 three-year period for assessment of tax deficiencies.  The cover letter (Form 907) that accompanied the consent referred to the 1981 taxable year.  Form 872-A, however, referred to the 1984 taxable year.  Along with the consent and the cover letter, the Commissioner included IRS publication 1035.  The front page of publication 1035 states the Commissioner's policy to identify tax returns under examination for which the statutory period is about to expire, and seeks a consent from the taxpayer to extend that period.

The Commissioner intended to request that the Buchines consent to extend the time to assess the tax for the 1981 tax year, because the three-year limitations period for that year was about to expire.  The Buchines received the package of documents from the IRS and Mark Buchine read both the cover letter and the consent. The Tax Court held that when he read the documents he knew that the consent was not intended for the 1984 tax year.

On September 19, 1984, Mark Buchine telephoned the number provided on the cover letter, and spoke with revenue agent Roy Fite.  At Mr. Fite's request, Mark Buchine provided Mr. Fite with

his name, the taxable year 1981, and his social security number. Mr. Fite took notes of his conversation with Mark Buchine. After the conversation, Mr. Fite wrote the above information on a telephone contact sheet and discarded his notes.

Before signing the consent, Mark Buchine told his wife to sign it, and she did. The Buchines knew when they signed the consent form that they had not yet filed their 1984 income tax return.

## II. PROCEDURAL HISTORY

Mark and Karen Buchine petitioned the United States Tax Court for a redetermination of proposed additional taxes ("deficiencies") determined by the Commissioner in Mark and his then-wife Karen's income for 1981, together with the carryback-effect of those adjustments on their joint tax returns for 1978, 1979, and 1980. The Tax Court held that it could reform Form 872-A based upon mutual mistake of the parties, and that clear and convincing evidence existed that Mark, Karen, and the Commissioner each intended the Form 872-A to apply to 1981, rather than 1984. The Tax Court also held that Karen was not an innocent spouse with regard to these matters.

After computations, on January 31, 1992, the Tax Court entered its decision setting forth Mark and Karen's tax liability for 1981 and the carryback years. On March 22, 1993, the Tax Court denied Mark and Karen's motion to reconsider Opinion, and motion to vacate and revise decision. Mark timely filed his notice of appeal, however, a question exists as to the timeliness of Karen's appeal to this court.

III. DISCUSSION

The Buchines claim the Tax Court: (1) went beyond its statutorily prescribed jurisdiction by reforming the consent agreement; and (2) clearly erred in finding that a written agreement existed between each of them and the IRS.

Karen Buchine argues separately that her notice of appeal was timely filed and that the district court clearly erred in finding that she was not an innocent spouse within the meaning of I.R.C. § 6013(e).

We find that the Tax Court did not go beyond its statutorily prescribed jurisdiction by applying the equitable principle of reformation. We further find that the Tax Court did not clearly err in finding that a written agreement existed between each of the Buchines and the IRS, and in finding that Karen Buchine did not fall within the meaning of an innocent spouse. Finally, we find that Karen Buchine's notice of appeal was timely filed.

A. *Did the Tax Court go beyond its limited jurisdiction?*

Mark and Karen Buchine argue that the Tax Court lacks general equitable powers to enlarge its jurisdiction beyond that statutorily prescribed by the Internal Revenue Code.

The Buchines assert that they filed their 1981 tax return on July 21, 1982, so that any notice of deficiency issued to them would have to have been mailed by the IRS on or before July 20, 1985, absent a valid written consent extending the three year statute of limitations. *See,* I.R.C. § 6501(a). The Buchines also assert that the consent form prepared by the IRS clearly and

4

unambiguously extended the statute of limitations for the 1984 tax year, not the 1981 tax year. The Buchines further assert that the Tax Court, based on *Woods v. C.I.R.*, 92 T.C. 776, 1989 WL 32907 (1989), reformed the consent form by substituting "1981" for "1984." In *Woods,* the Tax Court held that it had jurisdiction to reform a consent form to accord with the parties' mutual agreement which had not been expressed in the consent form due to scrivener's error. *Id.*

The Buchines assert that the *Woods,* decision is erroneous. They claim that the *Woods* court fashioned a slippery distinction between its jurisdictional grant and contract reformation. "[T]here is a difference, however, between the application of equitable principles to decide a matter over which we have jurisdiction and the exercise of "general equitable powers' to take jurisdiction over a matter not provided for by statute." *Id.* at 2971. The Buchines claim this distinction has no support in the Constitution, legislation or case law.

The Buchines claim that Article I courts do not have general equitable powers, including the power to reform a contract unless specifically provided by statute. The Supreme Court has twice ruled that predecessors to the U.S. Tax Court—the Board of Tax Appeals and the Tax Court of the U.S.—have no equity jurisdiction. *C.I.R. v. McCoy,* 484 U.S. 3, 7, 108 S.Ct. 217, 219, 98 L.Ed.2d 2 (1987); *C.I.R. v. Gooch Milling & Elevator Co.,* 320 U.S. 418, 419-20, 64 S.Ct. 184, 185-86, 88 L.Ed. 139 (1943). The Buchines argue that the Supreme Court has determined that Article I courts have no

5

jurisdiction to reform a contract absent express authority to do so. They further argue that since this court has held that Congress has not issued such statutory authority, the Tax Court in the instant case had no constitutional authority to apply the equitable remedy of reformation to create a basis for its jurisdiction. *See, Harvey v. United States,* 105 U.S. (15 Otto) 671, 26 L.Ed. 1206 (1881) (Court of claims, which at that time was an Article I court, did not have the power to reform an agreement.); *Continental Equities, Inc. v. C.I.R.,* 551 F.2d 74, 79 (5th Cir.1977) (Tax Court, being a court of limited jurisdiction, did not have equitable power to expand its jurisdiction to adjudicate a tax refund claim.).

Finally, the Buchines argue that Congress was quite specific in its directive as to how the statute of limitations could be extended beyond the basic three years set forth in I.R.C. section 6501(a). Pursuant to I.R.C. section 6501(c)(4), an extension of the statute of limitations is ineffective unless "both the [Commissioner] and the taxpayer have consented in writing...." Thus, I.R.C. Section 6501(c)(4) provides that the writing itself constitutes the agreement of the parties, rather than being a mere memorialization of an oral agreement. The Buchines argue that Congress deliberately chose the phrase "written consent" in determining when the statute of limitations could be extended. Application of any equitable principles to determine whether an agreement existed at all, as well as whether a writing need exist, are simply inconsistent with the plain language of I.R.C. Section

6

6501(c)(4).

The jurisdiction of the Tax Court to reform a consent form extending the statute of limitations is a question of law subject to *de novo* review. FED.R.CIV.P. 52(a).

In *Woods v. C.I.R.,* 92 T.C. 776, 1989 WL 32907 (1989), the Tax Court was faced with a fact situation very similar to the case at bar. In that case, the consent form erroneously named the entity as "Solar Environments, Inc." rather than "Solar Equipment, Inc." *Id.* at 2967. The Tax Court held,

> [t]he instant controversy involving the issue of whether the assessment of tax for a year properly before us is barred by the statute of limitations, is clearly within the jurisdiction of the Court. An issue based on the statute of limitations is a defense and not a plea to the jurisdiction of this Court. [citation omitted] In deciding this case, we are not expanding our statutory jurisdiction.
>
> * * * * * *
>
> The parties agree that the correctness of the deficiency, as determined by [the Commissioner], is dependent upon whether the period for assessing the deficiency had expired prior to issuance of the notice of deficiency. This in turn depends upon whether the written Form 872-A was effective to extend that period in accordance with what the parties intended. We clearly have jurisdiction to determine whether a deficiency exists and, in so doing must determine the efficacy of the Form 872-A. In so doing, we may apply equitable principles.

*Id.*

This court has acknowledged the distinction, espoused by the Tax Court, between exercising "general equitable powers" to take jurisdiction over a matter not provided for by statute and applying "equitable principles." In *Continental Equities, Inc. v. C.I.R.,* 551 F.2d 74 (5th Cir.1977), the question presented was whether the Tax Court could exercise general equitable powers to assume

7

jurisdiction to review the Commissioner's denial of a refund claim, and order that a refund be given. This court held that the Tax Court, being a court of limited jurisdiction, did not have equitable power to expand its jurisdiction to adjudicate a tax refund claim. *Id.* at 79. However, in *Mayfair Minerals, Inc. v. C.I.R.,* 456 F.2d 622 (5th Cir.1972), this court held that the Tax Court properly concluded that when the Commissioner allowed the statute of limitations to run on adjustments of income because of the taxpayer's misleading returns, the equitable principle of estoppel prohibited the taxpayer from denying that the deductions were properly taken. *Id.* at 623.

At the core of the Buchines' case, as in *Woods,* is the Tax Court's determination of whether a tax deficiency exists. This determination falls clearly within the ambit of the Tax Court's jurisdiction. The Tax Court in this case simply applied the equitable principle of reformation to a case over which it had jurisdiction.

Therefore, we find that the Tax Court appropriately reformed the consent form and that it did not improperly expand its limited jurisdiction by doing so.

B. *Did the Tax Court clearly err in finding that a written agreement existed between each of the Buchines and the IRS?*

The Buchines argue that when the Commissioner seeks reformation, he must show by clear and convincing evidence a manifestation of mutual assent. The Buchines assert that the Commissioner did not bear his burden of proving by clear and convincing evidence that the parties reached a mutual agreement,

8

and that the Tax Court's fact finding to the contrary is clearly erroneous.

The Buchines argue that the Tax Court's decision in the instant case is inconsistent with its body of law holding that the Commissioner suffers the risk of any defects in a document on which he relies as a waiver of the limitations period. *United States v. Grabscheid,* 1982 WL 1624, 82-1 U.S.T.C. ¶ 9382 (N.D.Ill.1982); *Schenk v. C.I.R.,* 35 T.C.M. (CCH) 1652, 1976 WL 3542 (1976).

The Buchines claim that in this case, there was no mutual mistake. The Buchines both testified that their intent was to extend the statute of limitations with respect to 1984, as reflected in the written extension they signed. They made no representation other than that their intent was to extend the 1984 year. The Buchines further claim that the IRS made a unilateral mistake, and, as stated in the Restatement of Contracts § 155, Comment b (1981), the Commissioner's only remedy is avoidance, which fails to extend the statute of limitations for 1981.

Mark Buchine argues that upon facts much less sympathetic to the taxpayer, the Tax Court recently held no mutual mistake existed. In *H Graphics/Access, Ltd. Partnership v. C.I.R.,* 63 T.C.M. (CCH) 3148, 1992 WL 129882 (1992), the IRS mailed a Form 870-P to the taxpayer, stating that the IRS proposed to disallow 1007 of the deductions claimed on a partnership tax return and requesting the taxpayer to make an offer of settlement on the Form 870-P. The taxpayer redrafted the Form 870-P to show only a 107 disallowance of the deductions, signed it and returned it to the

9

IRS.  The IRS did not notice the change and signed the Form 870-P as submitted, thereby creating a written agreement.  The Tax Court held that the IRS had agreed to only a 107 disallowance of the deductions.  In *H Graphics/Access,* the plaintiff was a lawyer-CPA, and former IRS agent with a full-time practice devoted to tax litigation and tax procedure.  Yet, the Tax Court believed his testimony that he had no knowledge of the Commissioner's procedures for handling the particular form involved in that case.

Karen Buchine argues that even if the Tax Court correctly found that an agreement existed between Mark Buchine and the IRS, the Tax Court clearly erred in finding that there was an agreement between her and the IRS.  She argues that the Tax Court went to great lengths to look into Mark Buchine's mind.  However, no such examination was undertaken with respect to her.  She argues that Mark Buchine's intent cannot be imputed to her.  *See, Estate of Sperling v. C.I.R.,* 22 T.C.M. (CCH) 1301, 1963 WL 596 (1963); *Ekdahl v. C.I.R.,* 18 B.T.A. 1230, 1930 WL 855 (1930).  She further argues that both she and Mark Buchine were required to reach an agreement with the IRS.  Finally, she argues that there was virtually no evidence that she intended Form 872-A to apply to the 1981 tax year, and all the evidence showed that her intent was that the form apply to 1984.

Review of the Tax Court's fact finding regarding mutual mistake of the parties can be reversed only if clearly erroneous.  *See,* I.R.C. § 7482(a)(1);  FED.R.CIV.P. 52(a).

The agreement to extend the statute of limitations between

10

the Commissioner and the Buchines is not a contract, but a unilateral waiver of a defense by the taxpayer. *Piarulle v. C.I.R.,* 80 T.C. 1035, 1983 WL 14837 (1983). Contract principles are significant, however, because section 6501(c)(4) requires the consent to be a written agreement between the parties. *Id.*

The Tax Court found that "[t]here are several extrinsic facts which we believe show that petitioners expected, intended, and had every reason to be on notice that Form 872-A signed in 1984 applied to 1981." The Tax Court concluded that Mark Buchine had a good working knowledge of many aspects of income tax law and procedure, and that his knowledge gave the Buchines every reason to know the consent signed in 1984 applied to 1981. It based that conclusion on the following facts: (1) he had a degree in accounting; (2) he worked in public accounting; (3) he prepared income tax returns for himself and others; (4) he sold tax shelters and was a tax matters partner or general partner for some of them when he received the Form 872-A; (5) he was familiar with the TEFRA partnership and S corporation audit and litigation provisions; and (6) he knew enough about tax procedures to be aware of the three-year limitations statute, and that requests to extend it usually occur near the end of the three-year period.

The Tax Court also concluded that Mark Buchine knew that the Form 872-A signed in 1984 could not have been an extension for 1984 because the Buchines had not yet filed their income tax return for 1984. The period for assessment of tax does not begin to run until the tax return for the year is filed. Since in November 1984 the

11

period for assessment of tax had not yet begun, it made no sense that the parties would seek to extend it. The Tax Court was convinced that Mark Buchine understood this. The Tax Court further concluded that the cover letter that accompanied Form 872-A referred to 1981 and that before the Buchines signed Form 872-A, Mark Buchine was aware that the cover letter stated that Form 872-A was intended to apply to 1981. Finally, when Mark Buchine called the IRS telephone number on the cover letter, he identified taxable year 1981.

We find, based on all of the evidence outlined above, that the Tax Court did not clearly err in finding that clear and convincing evidence existed that there was an actual agreement between Mark Buchine and the IRS, and that the writing contained a "scrivener's error."

With regard to Karen Buchine, the appellee correctly points out that the only exception in the Internal Revenue Code to the imputation of the actions of one spouse to the other spouse, when a joint return is filed, is the innocent spouse provision, section 6013(e), which is not implicated for purposes of the statute of limitations. Moreover, as the appellee points out, the cases Karen Buchine cites for the proposition that Mark Buchine's intent cannot be imputed to her are easily distinguished by the fact that she actually signed the consent form.

In *Estate of Sperling,* the Tax Court held that where the husband forged the wife's signature on a consent to extend the statute of limitations without her authority, the consent was not

12

valid as to the wife.  *Estate of Sperling,* 22 T.C.M. (CCH) at 1306, 1963 WL 596.  In *Ekdahl,* the Tax Court held that where the wife executed a consent, but the husband did not, the consent was not valid as to the husband.  *Ekdahl,* 18 B.T.A. at 1233, 1930 WL 855.  However, in this case, Karen Buchine admittedly signed all the relevant documents, and she knew of the erroneous reference to 1984 on the consent form before she signed it.

Therefore, we find that the Tax Court did not clearly err in finding that there was an agreement between Karen Buchine and the IRS.

C. *Was Karen Buchine's notice of appeal in this case timely filed?*

The trial of this case was held on February 25, 1991 and the Memorandum Opinion was issued on January 16, 1992.  The Decision was entered on January 31, 1992.  Karen and Mark Buchine's Motion to Vacate and Revise Decision, and Motion to Reconsider were received by the Tax Court on February 18, 1992.  The Tax Court issued its order denying the Motions on March 22, 1993.  Karen Buchine mailed her notice of appeal on June 17, 1993.

Karen Buchine argues that her notice of appeal was timely filed.  She asserts that an appeal of a Tax Court decision ordinarily requires the filing of a notice of appeal with the Clerk of the Tax Court within 90 days after the decision is entered.  I.R.C. § 7483.  She further asserts that when a timely post-trial motion is filed within thirty (30) days after the decision is entered, the time for appeal is terminated as to all parties and does not begin to run until an order disposing of the motion is

13

entered.  *Durkin v. C.I.R.,* 872 F.2d 1271, 1273 (7th Cir.1989), *cert. denied,* 493 U.S. 824, 110 S.Ct. 84, 107 L.Ed.2d 50 (1989). In that event, the time for appeal will commence on, and be computed from, the latter of the date an order is entered disposing of such motion or the date of entry of the decision.  FED.R.APP.P. 13(a).

Federal Rule of Appellate Procedure Rule 13, which governs review of decisions of the Tax Court, states in subsection (a) that the time for filing a notice of appeal is tolled by a motion to vacate or revise a decision of the Tax Court, and that the time for appeal commences to run from the entry of an order disposing of such motion, or from the entry of decision, whichever is later. Furthermore, subsection (b) states that if notice is delivered to the clerk by mail and it is received after the last day for filing, the postmark date shall be deemed to be the date of delivery.

The Buchine's motions were timely filed within 30 days after entry of the Tax Court's decision on January 31, 1992.  The filing of the motions terminated the running of the time for appeal until the order denying the Motions was entered on March 22, 1993.  Karen Buchine filed her notice of appeal by mailing it to the Tax Court on June 17, 1993, 87 days after the entry of such order.

Therefore, Karen Buchine's notice of appeal was timely filed.

D. *Did the Tax Court clearly err in finding that Karen Buchine was not an innocent spouse within the meaning of I.R.C. § 6013(e)?*

Karen Buchine argues that the Tax Court clearly erred in finding that she was not an innocent spouse within the meaning of I.R.C. section 6013(e).  She asserts that she satisfies all of the

14

requirements for innocent spouse relief under section 6013(e).

To obtain relief under section 6013(e), the person asserting innocent spouse status must prove that: (1) A joint return was filed for the year; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return; (3) the spouse desiring relief did not know, and had no reason to know, of the substantial understatement when signing the return; and (4) taking into account all the facts and circumstances, it is inequitable to hold the spouse seeking relief liable for the deficiency. *See,* I.R.C. § 6013(e)(1).

The Tax Court found that Karen Buchine satisfied the first two prongs but that she did not meet the last two.

Karen Buchine argues that she neither knew nor had reason to know of the substantial understatement. She argues that she did not realize that Mark Buchine had invested in the entities until their divorce, many years after 1981. She had no knowledge that there was a possible falsity appearing on the return. Therefore, she satisfies the "reason to know definition" enunciated in *Sanders v. United States,* 509 F.2d 162, 167 (5th Cir.1975).

She also argues that she only derived routine support from her husband. The tax benefits were utilized to meet normal household expenses. There were no lavish or unusual expenditures from which she might have suspected something unusual.

Karen Buchine further argues that it was clearly erroneous for the Tax Court to hold that it was not inequitable to hold her liable for the deficiencies. The key factor is whether she

15

significantly benefitted from the erroneous deductions and credits. She argues that the amount of the deductions and refunds totalling approximately $13,000 were not substantial. She argues that she and Mark Buchine did not buy a new car, go on gambling cruises, or have a condo in the Bahamas. At most, all she received was normal support at the time, and this is not considered a particularized benefit. She concludes, therefore, that the "equities" were all in her favor, but the Tax Court failed to see this.

Review of the Tax Court's factual findings are reviewed under the clearly erroneous standard of review. *See,* I.R.C. § 7482(a)(1); FED.R.CIV.P. 52(a).

The Tax Court found that Karen Buchine had actual knowledge that a substantial understatement existed under section 6013(e)(1)(C). The Tax Court based its finding on the following facts. Karen Buchine was listed as a shareholder in M. Lenmar, Ltd., and she was also identified as a partner in Adirondack Group. She admitted signing the joint 1981 tax return without coercion or intimidation by her husband. She testified at trial that she was aware that Mark Buchine was selling tax shelters, and that he told her the general details of the investments. She stated that she was unhappy about Mark's solicitations of her friends for tax shelter purchases because she believed them to be risky. Significantly, she knew of her potential tax liability arising from the claimed losses and credits in connection with the tax shelters prior to the issuance of the deficiency notice. She was so concerned with this, that her divorce decree required Mark Buchine

16

to indemnify her in the event of any tax liability.

The Tax Court further found Karen Buchine failed to prove that it would be inequitable to hold her liable for the delinquent taxes.

The most important factor in determining "inequity" is whether the taxpayer seeking relief "significantly benefitted" from the understatement of tax. *Belk v. C.I.R.,* 93 T.C. 434, 1989 WL 112763 (1989). The Tax Court expressly found that aside from her self-serving testimony, "[Karen] did not provide the Court with any objective evidence to convince us of her assertion such as values of specific assets and expenditures or tracing the benefit received." She offered no evidence with respect to her standard of living before the tax refunds and after the tax refunds so that a comparison could be made.

Based on the evidence outlined above, we find that the Tax Court did not clearly err in finding that Karen Buchine failed to qualify as an innocent spouse under section 6013(e).

## IV. CONCLUSION

We find that the Tax Court did not go beyond its statutorily prescribed jurisdiction by applying the equitable principle of reformation. We also find that the Tax Court did not clearly err in finding that a written agreement existed between each of the Buchines and the IRS, and in finding that Karen Buchine was not an innocent spouse within the meaning of I.R.C. section 6013(e). Therefore, the decision of the Tax Court is AFFIRMED.

17