45 F.3d 348
 75 A.F.T.R.2d 95-758, 95-1 USTC P 50,062
 David M. KELLEY; David M. Kelley, Executor; Estate of
Nancy I. Kelley, Deceased, Petitioners-Appellants,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
David M. KELLEY; Mary L. Kelley, Petitioners-Appellants,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
 Nos. 93-70867, 94-70113.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1994.
Decided Jan. 23, 1995.
 
 Arthur H. Boelter, Boelter & Gale, Seattle, WA, for petitioners-appellants.
 Bridgett M. Rowan and Marion E.M. Erickson, Tax Div., U.S. Dept. of Justice, Washington, DC, for respondent-appellee.
 Appeals from a Decision of the United States Tax Court.
 Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 In these consolidated appeals we are called upon to determine whether the United States Tax Court ("Tax Court") possesses the equitable power to reform consent-to-extend agreements entered into between taxpayers and the revenue collecting arm of the federal government. For the reasons which follow, we conclude that the Tax Court has a limited equitable power to reform such agreements, so long as they are properly before the Tax Court in the exercise of its subject matter jurisdiction.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 David M. Kelley ("Kelley") and his former wife, Nancy, filed joint federal income tax returns for 1976 and 1977. Following Nancy's death, Kelley filed an individual federal income tax return for 1978 as a qualifying widower. For 1979 and 1980, Kelley and his new wife, Mary ("Taxpayers"), filed joint federal income tax returns. The Internal Revenue Service ("IRS") audited Kelley's and Taxpayers' returns for tax years 1976 through 1980. During the course of this audit, Kelley and the IRS executed various standard form agreements which extended the normal running of the three-year statutory limitations period for assessing and collecting unpaid taxes. See 26 U.S.C. Secs. 6501(a), 6501(c)(4).[1] In one instance, Kelley executed an IRS Form 872, which extended until September 30, 1983, the limitations period for assessing taxes for 1978. In May 1983, Taxpayers executed an IRS Form 872-A, which indefinitely extended the limitations period for assessing taxes for 1979.
 
 
 3
 The following month the IRS sent another two IRS Forms 872-A to Taxpayers. Although tax year 1979 was printed at one point in each of the bodies of the two computer-generated forms, the one directed to Kelley had handwritten lines across the top of both pages stating, "For the period ended December 31, 1978[,]" while the one directed to Taxpayers had similarly handwritten lines atop both pages stating, "For the period ended December 31, 1980." Kelley executed the first form, and Taxpayers executed the second form. They then forwarded the documents to their accountant,[2] who sent them on to the IRS with a transmittal letter explaining that the form signed by Kelley was for tax year 1978, while the form signed by Taxpayers was for tax year 1980. The accountant mailed a copy of his cover letter to Taxpayers.
 
 
 4
 In May 1984, Taxpayers executed two IRS Forms 872-T,[3] the first covering tax years 1978 and 1979, the second covering tax year 1980. Less than ninety days later (i.e., within the time period stipulated to in the IRS Forms 872 and 872-A), the IRS issued statutory notices of deficiency against Kelley and his first wife's estate for tax years 1976, 1977, and 1978, and against Taxpayers for tax years 1979 and 1980.
 
 
 5
 On November 13, 1984, Kelley petitioned the Tax Court to redetermine the assessed deficiencies for tax years 1976 through 1978. That same day, Taxpayers jointly filed a separate petition with the Tax Court concerning the notices of deficiency for tax years 1979 and 1980. The two cases were consolidated and, over the course of the next several years, the parties successfully resolved all but one question in the two petitions, viz., did the IRS timely mail the notices of deficiency for tax years 1978 and 1980? The IRS argued that, because the parties had mutually agreed to extend the statutory limitations period for those two tax years, as evidenced by the two IRS Forms 872-A signed by Kelley and Taxpayers in June 1983, the notices were timely mailed. Taxpayers contended that, by signing the IRS Forms 872-A, they only agreed to extend the running of the statutory limitations period for tax year 1979. The Tax Court found that the parties had mutually intended the two IRS Forms 872-A to apply to tax years 1978 and 1980, respectively, and equitably reformed the two agreements[4] to reflect those dates. The Tax Court entered judgment in favor of the IRS, and Taxpayers have timely appealed.
 
 ANALYSIS
 Standard of Review
 
 6
 We review decisions of the Tax Court on the same basis as decisions in civil bench trials in United States District Court. Schmitz v. C.I.R., 34 F.3d 790, 791 (9th Cir.), petition for cert. filed, 63 U.S.L.W. 3462 (U.S. Nov. 23, 1994) (No. 94-944). Thus, the Tax Court's conclusions of law are examined de novo, Ann Jackson Family Found. v. C.I.R., 15 F.3d 917, 920 (9th Cir.1994); its factual findings are reviewed for clear error, Doherty v. C.I.R., 16 F.3d 338, 339 n. 2 (9th Cir.1994); and its discretionary rulings are examined for an abuse of discretion. Alexander Shokai, Inc. v. C.I.R., 34 F.3d 1480, 1485 (9th Cir.1994) (general conduct of trial).
 
 Discussion
 I. Tax Court's Equitable Power
 
 7
 This appeal largely stands or falls on the answer to the question of whether or not the Tax Court can equitably reform a consent-to-extend agreement to toll the running of the statutory limitations period. For the reasons which follow, we answer this question in the affirmative.
 
 
 8
 It is undisputed that, as an Article I court designed to handle cases of a specialized nature, "The Tax Court is a court of limited jurisdiction and lacks general equitable powers." C.I.R. v. McCoy, 484 U.S. 3, 7, 108 S.Ct. 217, 219, 98 L.Ed.2d 2 (1987) (per curiam); accord C.I.R. v. Gooch Milling & Elevator Co., 320 U.S. 418, 421, 64 S.Ct. 184, 186, 88 L.Ed. 139 (1943). However, the Tax Court has always understood this proposition to mean that, while it cannot act, equitably or otherwise, in a case over which it lacks or has lost jurisdiction, see Woods v. C.I.R., 92 T.C. 776, 785-87, 1989 WL 32907 (1989), the Tax Court can act equitably in a case in which it has jurisdiction. See id. at 784 and cases collected at nn. 3-9.
 
 
 9
 Numerous decisions from this Circuit have touched on the issue of the Tax Court's equitable power and/or jurisdiction. See e.g. Billingsley v. C.I.R., 868 F.2d 1081, 1084 (9th Cir.1989); Abatti v. C.I.R., 859 F.2d 115, 117, 118 (9th Cir.1988); Russell v. C.I.R., 678 F.2d 782, 784 (9th Cir.1982); First Sec. Bank of Idaho, N.A. v. C.I.R., 592 F.2d 1046, 1048 (9th Cir.1979); Feistman v. C.I.R., 587 F.2d 941, 943 (9th Cir.1978); Morse v. United States, 494 F.2d 876, 879 (9th Cir.1974); Flood v. C.I.R., 468 F.2d 904, 904-905 (9th Cir.1972), cert. denied, 411 U.S. 906, 93 S.Ct. 1529, 36 L.Ed.2d 195 (1973); Toscano v. C.I.R., 441 F.2d 930, 933 (9th Cir.1971); Lasky v. C.I.R., 235 F.2d 97, 100 (9th Cir.1956), aff'd by mem., 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957). The gist of these decisions may be summarized as holding, in part at least, that the Tax Court is a court of strictly limited jurisdiction and cannot assert equitable powers in any way that could be construed as extending its jurisdiction.[5]
 
 
 10
 While none of the above cases dealt with the precise question raised by the instant appeals, viz., whether and to what extent the Tax Court may act equitably in a matter over which it has jurisdiction, decisions from other Circuits provide helpful guidance. Indeed, the clear weight of authority from other jurisdictions holds that, except in the rare instance when a decision of the Tax Court was obtained either by way of a fraud on the court or through mutual mistake of the parties, the Tax Court has no equitable jurisdiction to act on a matter that is not the subject of a case properly before it (e.g., as the result of an untimely filing of a petition for redetermination of tax assessment, or when the time for filing a notice of appeal has passed after final judgment has been rendered, etc.), but it does have a limited equitable power to act in a case that is properly before it.
 
 
 11
 A good example of this distinction between equitable jurisdiction and equitable power appears in the recent decision of Buchine v. C.I.R., 20 F.3d 173 (5th Cir.1994). In that case the Court of Appeals for the Fifth Circuit confronted a case involving a factual situation nearly on all fours with the instant appeal. Citing the Supreme Court's decisions in McCoy and Gooch Milling, supra, as well as the Tax Court's holding in Woods, supra, the Fifth Circuit upheld the Tax Court's equitable reformation of the parties' IRS Form 872-A to reflect a date different from that argued by the taxpayers.
 
 
 12
 This court has acknowledged the distinction, espoused by the Tax Court, between exercising "general equitable powers" to take jurisdiction over a matter not provided for by statute and applying "equitable principles." In Continental Equities, Inc. v. C.I.R., 551 F.2d 74 (5th Cir.1977), the question presented was whether the Tax Court could exercise general equitable powers to assume jurisdiction to review the Commissioner's denial of a refund claim, and order that a refund be given. This court held that the Tax Court, being a court of limited jurisdiction, did not have equitable power to expand its jurisdiction to adjudicate a tax refund claim. Id. at 79. However, in Mayfair Minerals, Inc. v. C.I.R., 456 F.2d 622 (5th Cir.1972), this court held that the Tax Court properly concluded that when the Commissioner allowed the statute of limitations to run on adjustments of income because of the taxpayer's misleading returns, the equitable principle of estoppel prohibited the taxpayer from denying that the deductions were properly taken. Id. at 623.
 
 
 13
 At the core of the Buchines' case, as in Woods, is the Tax Court's determination of whether a tax deficiency exists. This determination falls clearly within the ambit of the Tax Court's jurisdiction. The Tax Court in this case simply applied the equitable principle of reformation to a case over which it had jurisdiction.
 
 
 14
 Therefore, we find that the Tax Court appropriately reformed the consent form and that it did not improperly expand its limited jurisdiction by doing so.
 
 
 15
 20 F.3d at 177-78 (emphasis added). Accord Bokum v. C.I.R., 992 F.2d 1136, 1140 (11th Cir.1993) (citing decisions from the Second, Fifth, Sixth, Eighth, Ninth,[6] and Eleventh Circuits); see also C.I.R. v. Penn Athletic Club Bldg., 176 F.2d 939, 943-44 (3d Cir.1949) (so long as a particular case is properly before it, the Tax Court may exercise its equitable power to look beyond the form of a given transaction to its economic substance).
 
 
 16
 In light of the above, we uphold the Tax Court's conclusion that it had the equitable power to reform the two IRS Forms 872-A that were the subject of the deficiency determination before it, because that determination did not have the effect of unlawfully expanding the Tax Court's strictly limited and statutorily defined subject matter jurisdiction.
 
 II. Tax Court's Equitable Decision
 
 17
 Taxpayers next argue that, regardless of whether or not the Tax Court had the equitable power to reform the two agreements, the facts do not support its finding that the parties intended the forms to cover years 1978 and 1980; and, in the alternative, even if the facts do support such a finding, the equities do not point in favor of the IRS.
 
 
 18
 We reject both arguments. Our review of the materials shows no clear error in the Tax Court's finding that the parties knew and understood that the two IRS Forms 872-A applied to tax years 1978 and 1980, not 1979. We likewise find no abuse of discretion in the Tax Court's determination that the equities point in favor of reforming the two documents to reflect the parties' agreement.[7] Accordingly, we hold that the Tax Court did not err by ruling in favor of the IRS. See Buchine v. C.I.R., 20 F.3d at 179-80.
 
 CONCLUSION
 
 19
 The Tax Court has a limited equitable power to reform consent-to-extend agreements that are otherwise properly before it as part of the subject matter in dispute. The Tax Court in the instant case did not abuse its discretion by reforming the two agreements in question to reflect the parties' understandings. Because we find no merit to any of the appellants' remaining arguments, the decision appealed from is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 "[T]he amount of any tax imposed ... shall be assessed within 3 years after the return was filed ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." 26 U.S.C. Sec. 6501(a) (in relevant part)
 "Where, before the expiration of the time ... for the assessment of any tax[,] ... both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon." 26 U.S.C. Sec. 6501(c)(4) (in relevant part).
 
 
 [2]
 Kelley had previously executed a power of attorney in favor of his accountant, appointing the latter to represent him before the IRS with respect to any matters concerning Kelley's 1978 return
 
 
 [3]
 IRS Form 872-T constitutes a unilateral termination of a taxpayer's earlier consent-to-extend granted by an IRS Form 872 or 872-A
 
 
 [4]
 We note in passing that an IRS Form 872-A is not technically a contract, but an agreement on the part of a taxpayer (consented to by the IRS) to waive the running of the normal statutory limitations period. Nevertheless, "contract principles are significant because [26 U.S.C. Sec. ] 6501(c)(4) requires that the parties reach a written agreement as to the extension. The term agreement means a manifestation of mutual assent. It is the objective manifestation of mutual assent as evidenced by the parties' overt acts that determines whether the parties have made an agreement." Woods v. C.I.R., 92 T.C. 776, 780, 1989 WL 32907 (1989) (citations omitted)
 
 
 [5]
 Thus, while a federal district court may be deprived of jurisdiction over a case upon the timely filing of a notice of appeal, it would still retain a limited equitable jurisdiction to enforce its orders. By way of contrast, no such equitable jurisdiction would exist in the Tax Court after a timely and proper notice of appeal had been filed
 
 
 [6]
 The Ninth Circuit case, Warner v. C.I.R., 526 F.2d 1 (9th Cir.1975), upheld the Commissioner's decision to seek recovery of an erroneous payment of a tax refund by way of a deficiency notice rather than a legal action for refund, based on its conclusion that the taxpayers could not invoke "a form of 'estoppel' " barring the Commissioner from doing what he did. Id. at 2
 
 
 [7]
 Indeed, the appellants' position is undercut by their very act of having executed the two IRS Forms 872-T for tax years 1978 and 1980; i.e., why did they purport to cancel extensions to which they claim they never agreed in the first place?