114 F.3d 1194
 79 A.F.T.R.2d 97-2900, 97-2 USTC P 50,545
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bill McDONALD and Richard D. Maynard, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 96-70476.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1997.
Decided May 23, 1997.
 
 1
 Before: O'SCANNLAIN and NOONAN, Circuit Judges, and RHOADES,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioners Bill McDonald and Richard Maynard appeal the tax court's decision affirming, with some modifications, deficiencies and additions to tax imposed by the Commissioner for the 1989 tax year. The tax court held that the Petitioners had unreported taxable income and that the Petitioners are liable for additions to tax for fraud. We affirm in part and remand in part.
 
 Background
 
 4
 The underlying facts of this case are summarized in our unpublished memorandum decision in McDonald v. Commissioner, No. 96-70333 (hereinafter " McDonald I "). McDonald I concerned the Petitioner's tax liability for the years 1987 and 1988. This case concerns the 1989 tax year. The Commissioner's deficiency determination for the entire three-year period was based, to a large extent, on Revenue Agent Pease's income reconstruction with respect to the Petitioners and the M & M partnership.
 
 Discussion
 
 5
 We review decisions of the United States Tax Court on the same basis as decisions in civil bench trials in United States District Court. Condor Int'l, Inc. v. Commissioner, 78 F.3d 1355, 1358 (9th Cir.1996); Kelley v. Commissioner, 45 F.3d 348, 350 (9th Cir.1995); Ball, Ball & Brosamer v. Commissioner, 964 F.2d 890, 891 (9th Cir.1992). Thus, the tax court's conclusions of law are reviewed de novo. Condor Int'l, 78 f.3d at 1358; Kelley, 45 F.3d at 350; Ann Jackson Family Found. v. Commissioner, 15 F.3d 917, 920 (9th Cir.1994). Factual findings are reviewed for clear error. Condor Int'l, 78 F.3d at 1358; Kelley, 45 F.3d at 350.
 
 
 6
 A. The Tax Court Did Not Commit Clear Error In Finding That The Commissioner's Deficiency Determination Should Be Accorded A Presumption of Correctness Because The Commissioner's Determination Had A Rational Foundation
 
 
 7
 "The Commissioner's method of calculating ... income is presumptively correct and will be affirmed as long as it is rationally based. The taxpayer has the burden of proving the Commissioner's method to be wrong." Cracchiola v. Commissioner, 643 F.2d 1383, 1385 (9th Cir.1981) (citation omitted). "Whether a rational foundation for deficiency determination exists is a factual question; the tax court's findings can only be overturned on a showing that they are clearly erroneous." Edelson v. Commissioner, 829 F.2d 828 (9th Cir.1987); accord United States v. Stonehill, 702 F.2d 1288, 1295 (9th Cir.1983), cert. denied, 465 U.S. 1079 (1984).
 
 
 8
 Several of the Petitioner's attacks on the Commissioner's income reconstruction are repetitive of the arguments made in McDonald I and have been addressed in our memorandum decision in that case. The arguments that relate only to the 1989 tax period are discussed in subsections 1, 2 and 3 below.
 
 1. Unreported Client Fee Income
 
 9
 The Petitioners first contend that the Commissioner's income reconstruction was erroneous because the Commissioner failed to adequately reduce the Petitioners' unreported income figure by the 1989 deposits into the Merchants account attributable to GCF. We disagree. Pease attempted to reduce the instances of overlapping income allocation between GCF and M & M. Pease reduced the unreported income figure by $33,388, an amount equal to the Merchants deposits for the first seven months of 1989[1] and which amount was used by GCF in arriving at its gross income figure on GCF's 1988 tax return. As to the last five months of 1989, the Petitioners' unreported income figure was reduced by $4,938, even though the Merchants deposits for that period totalled $26,679. The reason that the full amount of the Merchants deposits during the last five months of 1989 were not attributed solely to GCF is that the Petitioners' records were so inadequate and incomplete that the Commissioner could not determine whether the remainder of the deposits were attributable to GCF. Recall that GCF was an accrual method taxpayer and that the increases or decreases in GCF's accounts receivable must be applied to GCF's bank deposits to arrive at an accrual method measure of GCF's income. In the absence of adequate accounts receivable records for GCF, which the Petitioners did not provide, the Commissioner could not know whether the Merchants deposits were attributable to GCF or M & M (and, hence, to the Petitioners).
 
 
 10
 In short, the Petitioners are responsible for the circumstances they now face because they failed to keep adequate records. In the absence of adequate records (especially where the parties stipulated that some of the checks received from M & M clients were deposited into the Merchants account), bald attacks on the Commissioner's determination will not do. As the tax court has already made clear:
 
 
 11
 We must emphasize that the petitioners have not performed a reconstruction of their corporate, partnership, or individual income by which we could test the accuracy of respondent's method. Petitioners have provided only their self-serving testimony, which is both uncorroborated and contradictory to the record in this case.
 
 
 12
 We will quickly dispose of the Petitioners' other minor attacks. The first is that the Commissioner overstated the Petitioners' unreported income by failing to reduce the unreported income figure by the income actually reported on M & M's partnership return. This is not true. M & M's reported income was distributed entirely to the Petitioners and the Petitioners reported the income on their individual returns. The Commissioner's deficiency determination took into account the income actually reported by the Petitioners. Second, the Petitioners argue that M & M was erroneously disallowed a deduction for fees paid to McDonald's daughter. As the Commissioner points out, M & M did not claim this deduction on its partnership return and the Petitoners did not raise the issue in their petition to the tax court. The Petitioners have thus conceded that the deduction was not allowable. Tax Court Rule 34(b)(4) ( 26 U.S.C.).
 
 2. Judicial Estoppel
 
 13
 To the extent that Pease could not determine from the Petitioners' records whether unreported income was attributable to GCF or M & M (and, hence, to the Petitioners), the Commissioner attributed the income to both entities. The Commissioner's deficiency determination asserted against GCF has become final.[2] The Petitioners contend that the doctrine of judicial estoppel should prevent the Commissioner from asserting that the same income which has been attributed to GCF is now attributable to M & M. We agree with the tax court that judicial estoppel is not appropriate in this case and that it was proper for the Commissioner to attribute the unreported income to both GCF and M & M.
 
 
 14
 "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Risetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir.1996). "It is an equitable doctrine intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.' " Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir.1997) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, 501 U.S. 1260 (1991)). Because of its purpose and equitable nature, invoking the doctrine of judicial estoppel is discretionary. Russell, 893 F.2d at 1037.
 
 
 15
 Here, there is no equitable reason to prevent the Commissioner from attributing unreported client fee income to both GCF and M & M. The Petitioners' accounting enterprise was a mixed-up mess, with client fees indiscriminately spread among a corporation, a partnership, the Petitioners and their families. Facing an analogous state of affairs, the Second Circuit explained:
 
 
 16
 There are ... circumstances under which the Commissioner of Internal Revenue is entitled to charge a participant in income-generating activity with a greater share of the income of the enterprise. This occurs when the nature of an enterprise's operation precludes ascertainment of the identities of those who shared the income or the percentages of their proportionate interests.... In such circumstances, the untraced income has been either prorated equally among all the participants, or attributed in full to each of the participants. In the latter event, the Commissioner is limited, however, to collection of only a single tax on the unapportioned income.
 
 
 17
 Schaffer v. Commissioner, 779 F.2d 849, 852 (2nd Cir.1985) (citations omitted). The Second Circuit's reasoning is appropriately applied to the instant case.[3] As the Petitioners are quick to point out, "It cannot be determined from the evidence presented by Respondent what is the proper allocation of this [unreported client fee] income." (Appellants' Brief at 23.) But the Petitioners seem to forget that they are the ones who have muddied these waters, yet they have come forward with no means by which the unreported income can be allocated between GCF and M & M. To accept the Petitioners' judicial estoppel argument would be to hold that the Petitioners, through their own fault, have forced the Commissioner to guess which entity should be taxed, perhaps to find out later that the guess was wrong (possibly after the statute of limitations would bar the Commissioner's assessment of the proper taxable entity). Such a ruling would not produce the type of equity that the doctrine of judicial estoppel is intended to promote. The tax court correctly found that the Commissioner was entitled to attribute unreported income to both GCF and M & M.[4]
 
 3. Checks Drawn On The Bank Of Lodi Account
 
 18
 During 1989, checks payable to the Petitioners were drawn on GCF's Bank of Lodi account. The checks to Maynard totalled $20,421 and the checks to McDonald totalled $6,024. In our decision in McDonald I, we concluded that the checks to the Petitioners from the Bank of Lodi account constituted taxable income to the Petitioners for 1987 and 1988. The reasoning was that the Petitioners had no basis for denying that these accessions to wealth constituted income. The bank deposits represented income to GCF, but the checks drawn on the accounts constituted income to the Petitioners. That the same dollars were taxed twice (once to GCF and once to the Petitioners) was the price that the Petitioners paid to shield income from personal creditors by funnelling the income through a corporate entity. The same would hold true in this case if the bank deposits themselves had been attributed as income to GCF but not to M & M. But this case is different and there is merit to the Petitioners' argument that treating the Bank of Lodi checks as income to the Petitioners constitutes double taxation. The reason is that in 1989, the Bank of Lodi deposits are being directly attributed as income to M & M (and, hence, to the Petitioners).[5] In these circumstances, also treating the checks as income to the Petitioners equates to taxing the same income twice (both times to the Petitioners), and the rationale for doing so does not apply. While it is true that the Commissioner has also attributed the 1989 Bank of Lodi deposits to GCF, it appears that the Commissioner prefers to treat the deposits as income to M & M (see footnote 3.). Because treatment of the Bank of Lodi deposits as income to M & M, and the checks drawn on the Bank of Lodi account as income to the Petitioners, constitutes unwarranted double taxation, the Petitioners' deficiency for 1989 must be reduced by the amount of the checks drawn on the Bank of Lodi account.
 
 
 19
 Although this error must be corrected, the Petitioners have failed to show that the tax court erred in finding that the Commissioner's income reconstruction had a rational foundation and was to be accorded a presumption of correctness. This is so because "[w]here an assessment is based on more than one item, the presumption of correctness attaches to each item. Proof that an item is in error destroys the presumption for that single item; the remaining items retain their presumption of correctness." Stonehill, 702 F.2d at 1294.
 
 
 20
 B. The Tax Court Did Not Err In Its Allocation Of Partnership Income Between Maynard And McDonald
 
 
 21
 Generally, a partner's distributive share of income is determined with reference to the partnership agreement. I.R.C. § 704(a). An oral partnership agreement is recognized for tax purposes. Treas.Reg. § 1.761-1(c). Where the partnership agreement does not specify the distribution of partnership income, the partner's distributive share is determined according to the partner's interest in the partnership. I.R.C. § 704(b). "Guaranteed payments" are determined without regard to income and are payments to partners for services or capital contributions provided to the partnership. I.R.C. § 707(c).
 
 
 22
 In tax court, the Commissioner argued that M & M's income should be allocated equally between the Petitioners. The tax court disagreed and found that the partnership income was to be allocated based upon the proportionate share of the services provided by each partner. The share of services performed by each partner was determined with reference to percentage of client returns prepared by each partner, taking into account the fact that McDonald performed most of M & M's administrative tasks. In light of these factors, the tax court concluded that approximately two-thirds of M & M's income was attributable to Maynard and one-third to McDonald.
 
 
 23
 We reject the Petitioners' argument that the tax court erred on this issue. The Petitioners contended that their oral partnership agreement was that McDonald was not to receive more than $6,000 of M & M's income, the remainder going to Maynard. A review of the evidence reveals that the tax court properly rejected the Petitioner's contention. In fact, the tax court said that the Petitioners' testimony in this regard "defies belief." Both Maynard's and McDonald's Schedule K-1's indicated that they each had a 50% interest in the partnership. Neither Maynard nor McDonald reported any ordinary income from the partnership on the K-1's. Instead, the K-1's indicated only that each partner received a "guaranteed payment", about 85% of M & M's reported income going to Maynard, the remainder to McDonald. Neither Petitioner reported any ordinary income distribution from the partnership. The tax court did not disrupt the guaranteed payments to the Petitioners (nor did the Commissioner). The tax court simply held that, as to the remainder of the unreported income, the distributive share of each partner should be in accordance with the services provided by each partner. Beyond rejecting the alleged $6,000 cap on McDonald's share, the tax court's finding was entirely consistent with the Petitioners' argument that allocation of income was based on the services provided.[6] And the tax court was certainly reasonable in rejecting the Petitioners' testimony regarding the $6,000 cap. As the tax court noted, the erratic income distribution in prior years "did not lend much support for petitioners' argument." And as also stated by the tax court:
 
 
 24
 petitioners' financial transactions, which included shifting relatively large amounts of cash between petitioners and their families, combined with petitioners' indiscriminate use of reported and unreported bank deposits for personal purposes, and their failure to distinguish between interests in the partnership and corporate entities, severely weaken petitioners' credibility regarding their alleged partnership arrangements.
 
 
 25
 Finally, there is no merit to the Petitioners' argument that notions of collateral estoppel preclude the income allocation made in this case. In Maynard, the tax court similarly rejected the Commissioner's 50-50 income allocation and held that M & M's income was to be allocated unequally, in proportion to the services provided to the partnership. The tax court in Maynard did not hold that McDonald's distributive share was to be limited to $6,000 and, as in this case, did not disrupt the guaranteed payments actually reported by the Petitioners on their returns. As the conclusions in both Maynard and in this case are essentially identical, the Petitioners' collateral estoppel argument is not well taken.
 
 
 26
 C. The Tax Court Did Not Commit Clear Error In Determining That The Petitioners Had Other Unreported Income
 
 
 27
 The Petitioners contest the tax court's finding that certain unexplained funds used by them during 1989 derived from a taxable source of income. Specifically, the Petitioners challenge the tax court's findings with respect to currency used by the Petitioners to purchase several cashier's checks, a $1,000 currency deposit made by McDonald into the M & M Trust Account, and the checks received by Maynard from various individuals.
 
 
 28
 As discussed above, the Commissioner's determination was presumptively correct because evidence was introduced showing that the Petitioners had unreported income. Hence, the Petitioners bore the burden of establishing that unexplained funds came from a non-taxable source. Delaney v. Commissioner, 743 F.2d 670, 671-72 (9th Cir.1984) (taxpayer failed to demonstrate that funds used to purchase gold coins came from nontaxable source). In determining whether a taxpayer has met his burden of proof on a contested issue, "[t]he credibility of the taxpayer is a crucial factor." Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir.1991). The tax court's conclusion that tax was due from unexplained funds will not be overturned absent a showing that the tax court's finding was clearly erroneous. Keogh v. Commissioner, 713 F.2d 496, 501 (9th Cir.1983).
 
 
 29
 Based on all of the circumstances of this case, we cannot say that the tax court clearly erred in finding that the Petitioners' unexplained funds constituted taxable income. First, there is no merit to the contention that the funds used to purchase cashier's checks have already been taxed as M & M income. The Petitioners stipulated that not all of the client fee income was deposited into any bank account; the Petitioners simply cashed some client checks. Moreover, the Petitioners do not suggest that Pease was able to account for all of the Petitioners' clients or all of the client fees. As the tax court said: "Although petitioners pointed out situations where they contended that no [client] fee or a lesser fee was charged, when asked whether Pease understated any fees, petitioners' recollection failed them." Second, given the obvious existence of unreported and non-deposited income, the Petitioners' general pattern of income concealment, and the total lack of credibility assigned by the tax court to the Petitioners' testimony, the tax court did not clearly err in rejecting the Petitioners' explanations regarding the source of the unexplained funds.
 
 
 30
 Finally, we note the discrepancies between the parties' concessions and the tax court's opinion on the one hand, and the tax court's decision on the other. Although the Commissioner conceded that only $3,000 of the funds that McDonald used to purchase a $9,000 cashier's check constituted income to McDonald, the entire $9,000 was included in the computation of decision. (Appellants' Brief at 39; Respondent's Brief at 28 n. 7.) By the same token, the decision did not include another $9,000 that the tax court held was income. (Appellants' Brief at 39 n. 5; Respondent's Brief at 28 n. 7). Finally, the Commissioner conceded that a $5,000 check written to Maynard did not constitute income, but it was nevertheless included in the decision. (Appellants' Brief at 57; Respondent's Brief at 28 n. 7.) As each of the parties has stipulated to the accuracy of the computation for decision, we find no occasion to modify the tax court's decision as to these matters. (CR 53; CR 54; ER 296-99.)
 
 
 31
 D. The Tax Court Did Not Clearly Err In Finding That The Petitioners Are Liable For Additions To Tax For Fraud
 
 
 32
 "Review of a finding of fraud is a question of fact and such finding will be reversed only if clearly erroneous." Edelson, 829 F.2d at 832.
 
 
 33
 The Commissioner bears the burden of establishing fraud under I.R.C. § 6663 by clear and convincing evidence. Id. Fraud in this context is "intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." Id. at 833 (internal quotations omitted). "Because fraudulent intent is rarely established by direct evidence, this court has inferred intent from various kinds of circumstantial evidence." Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir.1986). "Such 'badges of fraud' ... include: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities." Edelson, 829 F.2d at 832.
 
 
 34
 The record in this case reveals sufficient evidence from which the tax court could properly conclude that the Commissioner had proved fraud by clear and convincing evidence. After finding "disingenuous" Maynard's explanation that he did not report income because of his claimed carryforward deductions, the tax court ably summarized all of the evidence suggesting the Petitioners' fraud:
 
 
 35
 The record here is replete with evidence of petitioners' fraudulent intent. Petitioners, tax professionals who prepare tax returns for a living and represent clients before the Internal Revenue Service, were aware of the need for documentation and records to support the items reported on tax returns. In light of their having that knowledge, coupled with other evidence, we find that their discarding of their supporting income and client documentation was an intentional act designed to conceal and evade the reporting and payment of Federal income tax. Other factors that support a finding of fraud include the relatively large underpayments, use of the corporate entity to conceal information from creditors (including respondent), manipulations of deductions and income between the corporate and partnership entities, dealing in cash (including the purchase of multiple cashier's checks on the same date in amounts less than $10,000[7]), failure to deposit and account for payments for services from clients, use of multiple bank accounts and failure to disclose their existence to respondent's agent (including refusal to divulge the names of clients), attempts to obtain corporate deductions by making monthly payments as travel reimbursement when such travel was both undocumented and not for business purposes, and manipulation of income between petitioners and their family members.
 
 
 36
 The tax court's finding of fraud is affirmed.
 
 Conclusion
 
 37
 The decision of the tax court is affirmed except with respect to the checks written to the Petitioners on the Bank of Lodi account. The case is remanded to the tax court for recomputation of its decision to reflect the reduced deficiency with respect to the Bank of Lodi checks written to the Petitioners.
 
 
 
 *
 The Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 GCF's tax year corresponded to its fiscal year, which ran from August 1 to July 31. M & M reported on a calendar year basis
 
 
 [2]
 GCF filed a petition for redetermination in the tax court, but GCF's suit was dismissed for lack of capacity because the State of California suspended GCF's corporate charter
 
 
 [3]
 We note that the Commissioner in this case will collect only one tax. The Commissioner has represented to the tax court and to this court that GCF's assessments will be abated to the extent that they still overlap the Petitioners' assessments. (Respondent's Brief at 26.)
 
 
 [4]
 We find meritless the Petitioners' argument that collateral estoppel prevents the Commissioner from treating GCF as a "sham" corporation in this case, because GCF was found to be a valid corporation and a separate taxable entity in Maynard. The Commissioner did treat GCF as a separate taxable entity and assessed a deficiency against GCF. Indeed, the Petitioners' judicial estoppel argument was premised on the fact that the Commissioner attributed income to GCF as a separate taxable entity
 
 
 [5]
 In arriving at M & M's reconstructed client income figure for 1987 and 1988, the Commissioner eliminated amounts that were deposited into the Merchants and Bank of Lodi accounts. The bank deposits were treated as income to GCF. For 1989, however, only the Merchants deposits were eliminated from the M & M income reconstruction. (ER at 135.) Agent Pease, through his trial testimony, acknowledged that the Bank of Lodi deposits were attributed to both GCF and M & M, and that the checks drawn on the Bank of Lodi account were attributed as income to the Petitioners. (RT at 235-37; ER 188-90.)
 
 
 [6]
 The Petitioner's do not claim that their guaranteed payments were determined with reference to capital contributions. The returns indicate that no capital contributions were made
 
 
 [7]
 Financial institutions are required to report to the Federal Government cash transactions in excess of $10,000. See 31 U.S.C. § 5313(a); 31 C.F.R. § 103.22