Norman E. ANDERSON; The Zeitgeist Co., Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 93–16114.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1994.

Decided Jan. 5, 1995.

David M. Kirsch, San Jose, CA, for plaintiffs-appellants.

Joan I. Oppenheimer, (Argued); Gary R. Allen (On the Briefs), U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: HUG, CANBY, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The Internal Revenue Service ("IRS"), in an internal manual, has created a means of delaying the sale of seized property beyond what the statute, 26 U.S.C. § 6335, and associated regulations allow. The additional delay is impermissible.

## I. FACTS

The IRS assessed Mr. Anderson in 1984 for unpaid income taxes for tax years 1978 and 1979. It did not proceed with the collection efforts at issue in this case until the statute of limitations was about to run, in 1990. On October 24, 1990, five days before the limitations period would have expired on the assessments, the IRS seized a five acre parcel of land in California in which Mr. Anderson apparently owned the beneficial interest. The revenue officer was unable to locate the property, a remote parcel in the Santa Cruz mountains, so he accomplished the seizure by filing a notice of lien and mailing notices of levy and seizure. The IRS did not attempt to sell the property until almost a year later.

On August 21, 1991, the assigned revenue officer established that the minimum acceptable bid would be $61,807.43, much less than fair market value of the land. Title was clouded because Mr. Anderson had conveyed the land to his companion after receiving his assessment in 1984, and she had conveyed it in a revocable trust to the Zeitgeist Company. The IRS regarded Mr. Anderson, who lived on the land and payed the mortgage and taxes, as the true owner despite bare legal title in Zeitgeist.

On September 29, 1991, the IRS advertised that the property would be sold at auction on October 16, 1991. Thirty-seven prospective bidders came to the sale, but none of them had with them the necessary 20 percent cash or equivalent down payment. The revenue officer decided not to buy the property for the government, and announced that the sale would be postponed until November 14, 1991. The new sale was advertised on October 25, 1991, but no prospective bidders except for the revenue agent came. The revenue officer again decided to post-

pone the auction rather than bid-in the property for the government. The second postponement was until March 11, 1992. The revenue officer took the position that he had never "commenced a sale," which he understood to mean "gathering people around and announcing that the sale is beginning."

Mr. Anderson filed suit to enjoin the March sale. The district court granted summary judgment to the IRS, but the government has agreed to cancel the sale until this litigation is over. Mr. Anderson appeals.

## II. ANALYSIS

■ All that the parties have put at issue is whether the second postponement of the sale was authorized by law and, if not, whether the property must be released.[1] Mr. Anderson argues that because the sale did not take place within 40 days of the public notice, or a month thereafter, the government was bound to release it back to him. He is right. That is what the law says. 26 U.S.C. § 6335(d) & (e).

Here are the relevant portions of the statute governing the sale of seized property, highlighting the portions necessary to understand the required order of events:

(a) **Notice of Seizure.** As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized and, in the case of real property, a description with reasonable certainty of the property seized.

(b) **Notice of sale.** *The Secretary shall as soon as practicable after seizure of the property give notice to the owner,* in the manner prescribed in subsection (a), *and shall cause a notification to be published in some newspaper* published or generally circulated within the county wherein such seizure is made, or, if there be no newspaper published or generally circulated in such county, shall post such notice at the post office nearest the place where the seizure is made, and in not less than two other public places. *Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof.* Whenever levy is made without regard to the 10-day period provided in section 6331(a), public notice of sale of the property seized shall not be made within such 10-day period unless section 6336 (relating to sale of perishable goods) is applicable.

\* \* \* \* \* \*

(d) **Time and place of sale.** *The time of sale shall not be less than 10 days nor more than 40 days from the time of giving of public notice under subsection (b).* The place of sale shall be within the county in which the property is seized, except by special order of the Secretary.

(e) **Manner and conditions of sale.** (1) **In general.** (A) Determinations relating to minimum price. Before the sale of the property seized by levy, the Secretary shall determine—

(i) a minimum price for which such property shall be sold (taking into account the expense of making the levy and conducting the sale), and

(ii) whether, on the basis of criteria prescribed by the Secretary the purchase of such property by the United States at such minimum price would be in the interest of the United States.

\* \* \* \* \* \*

---

1. The government takes the position that the district court lacked jurisdiction as to Zeitgeist, because as a third party its only remedy was a wrongful levy action under 26 U.S.C. § 7426, which it did not file. Zeitgeist has not disputed this contention. We therefore affirm the judgment of dismissal of Zeitgeist's action, but only on this procedural ground. *See Winebrenner v. United States,* 924 F.2d 851, 855 (9th Cir.1991). We do not reach the substantive ground relied upon by the district court.

(D) Release to owner in other cases. *If, at the sale, the property is not declared sold under subparagraph (B) or (C) [to the highest bidder or to the United States], the property shall be released to the owner* thereof and the expenses of the levy and sale shall be added to the amount of tax for the collection of which the levy was made. Any property released under this subparagraph shall remain subject to any lien imposed under subchapter C.

**(2) Additional rules applicable to sale.** *The Secretary shall by regulation prescribe the manner and other conditions of the sale of property seized by levy.* If one or more alternative methods or conditions are permitted by regulations, the Secretary shall select the alternatives applicable to the sale. *Such regulations shall provide:*

\*     \*     \*     \*     \*     \*

(F) *Under what circumstances the Secretary may adjourn the sale from time to time (but such adjournments shall not be for a period to exceed in all 1 month).*

\*     \*     \*     \*     \*     \*

**(f) Right to request sale of seized property within 60 days.** *The owner of any property seized by levy may request that the Secretary sell such property within 60 days* after such request (or within such longer period as may be specified by the owner). The Secretary shall comply with such requests unless the Secretary determines (and notifies the owner within such period) that such compliance would not be in the best interests of the United States.

26 U.S.C. § 6335(a)–(f) excerpts (emphasis added).

Congress has here told the IRS that "as soon as practicable after the seizure," it shall give notice to the owner, and shall give public notice of the time, place, manner and conditions of sale. "The time of sale shall not be less than 10 days nor more than 40 days from the time of giving public notice." 26 U.S.C. § 6335(d). That Congress intended to impose a mandatory time limit of 40 days from public notice to sale is shown by its use

of the word "shall." If the property is not sold to a bidder or purchased by the United States at the sale, then "the property shall be released to the owner." 26 U.S.C. § 6335(e)(1)(D). Congress phrased this too as mandatory.

Congress left but one means of delaying the sale beyond 40 days, after publication of notice. The method for delay allowed by Congress is that the Secretary "shall by regulations" provide "under what circumstances the Secretary may adjourn the sale from time to time (but such adjournments shall not be for a period to exceed in all 1 month)." 26 U.S.C. § 6335(e)(2)(F). This language requires that the Secretary provide for any such delays "by regulations." It expressly limits such delays to one month.

The Secretary adopted regulations in accord with the statutory authorization. They paraphrase the statute, and do not allow for delays of more than a month:

(1) *Time and place of sale.* The time of sale shall not be less than 10 days nor more than 40 days from the time of giving public notice. . . .

(2) *Adjournment of sale.* When it appears to the district director that an adjournment of the sale will best serve the interest of the United States or that of the taxpayer, the district director may adjourn, or cause the internal revenue officer conducting the sale to adjourn, the sale from time to time, but the date of the sale shall not be later than one month after the date fixed in the original notice of sale.

26 C.F.R. § 301.6335–1(c).

These regulations add nothing to the statute for purposes of the case at bar. Neither the statute nor the regulations authorize the second delay of the sale, from November to the following March.

■ The government argues that after the 40 days and the month adjournment expire, it can issue a new notice of sale and advertise again, without time limit. It would have us distinguish an "adjournment" of a sale beyond the statutory period, which it concedes would be barred, from a "postponement" of the sale, which it argues is allowed without time limitation. The IRS cites no authority

whatsoever for this distinction between "postponement" and "adjournment," and we have found none. To the contrary, we have found a Supreme Court decision discussing auction procedures, which uses the terms interchangeably. *Blossom v. Railroad Company,* 70 U.S. (3 Wall.) 196, 203–04, 18 L.Ed. 43 (1865). Nevertheless, the IRS points out that its internal manual provides for such a distinction:

> Prior to starting the sale, the revenue officer may postpone the sale if it will serve the interest of the taxpayer or the government. If the revised date of sale is more than 40 days from the date of the public notice of sale, a new notice of sale is required.

Internal Revenue Manual § 56(14)1.3–(1). But the IRS correctly concedes that its internal agents' manual does not have the force of law, *see Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981), and makes no *Chevron* argument for deference to this language from its manual, not promulgated as a regulation.

The government argues that as a matter of policy, the IRS manual interpretation is desirable, because unlimited power to delay sales will enable the IRS to sell seized property for more money. If that were so in a particular case, the taxpayer might wish to stipulate to such a delay. There was no stipulation in the case at bar. Congress did not adopt a policy of giving the IRS discretion to sell the property when, in its discretion, sale would be desirable. It adopted a different policy—"fish or cut bait." Congress told the Secretary to provide for terms and conditions of sale by regulation, and told the Secretary that those regulations could not allow adjournments of a sale of more than one month. These express limitations are inconsistent with the IRS's preferred interpretation, that it may delay sales indefinitely. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

■ The government argues that even if the delay was not authorized by law, the property should not be released. But the statute limits delay of the sale to forty days from the notice plus one month for adjournments, and says that if "at the sale, the property is not declared sold ... the property shall be released to the owner." 26 U.S.C. § 6335(e)(1)(D). The word "shall" leaves no room for discretion. The statutory scheme requires the IRS to give notice of sale, conduct the sale within 10 to 40 days of notice, adjourn the sale for no more than a month, and then sell the property, buy it for the government, or release it. Had the IRS not delayed until a few days before limitations ran, it could have used the continuing lien under subsection (e)(1)(D) to seize and try to sell the property again. What it cannot do, in the face of the mandatory statutory command to "release" the property, is hold onto it.

The government argues that (1) a "sale" does not take place until someone bids on the property, and (2) the release provision operates only if "at the sale, the property is not declared sold," so (3) the release requirement does not operate where the auction is delayed. Implicit in this argument is the notion that the government never held a "sale" of the property because nobody came. This narrow view of "sale" makes no sense because (1) the government came, and could buy the property if it chose to; (2) in ordinary speech, a store may conduct a "sale" at which no customers show up; (3) the purpose of subsection (e) is to command the IRS to sell the property, buy it, or release it, within 40 days of notice, plus up to one month of adjournment.

■ There is no room for us to accept the IRS suggestion that it would be better policy to allow it more flexibility. Congress selected the controlling policy, and the IRS must follow the law:

> That no individual or public officer can sell, and convey good title to, the land of another, unless authorized to do so by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his

act is invalid, is a principle which has been repeatedly recognized in this Court. *Thatcher v. Powell,* 19 U.S. (6 Wheat) 119, 124, 5 L.Ed. 221 (1821) (Marshall, C.J.). We, like other circuits, have always required strict compliance by the government with § 6335. *Goodwin v. United States,* 935 F.2d 1061 (9th Cir.1991); *Kulawy v. United States,* 917 F.2d 729 (2d Cir.1990); *Reece v. Scoggins,* 506 F.2d 967 (5th Cir.1975); *Johnson v. Gartlan,* 470 F.2d 1104 (4th Cir.1973). The law gives the IRS three possibilities at the time of the sale, plus adjournments up to a month, selling the property, buying it, or releasing it. 26 U.S.C. § 6335(e). Congress expressly barred the alternative of delaying action beyond its time limits while refusing to release the property.

 The government argues that Mr. Anderson may not attack the methods employed by the IRS, because his only remedy is his right to request a sale within sixty days, under 6335(f):

> **(f) Right to request sale of seized property within 60 days.** The owner of any property seized by levy may request that the Secretary sell such property within 60 days after such request (or within such longer period as may be specified by the owner). The Secretary shall comply with such requests unless the Secretary determines (and notifies the owner within such period) that such compliance would not be in the best interests of the United States.

26 U.S.C. § 6335(f).

Subsection (b) of the statute does not say exactly how long the government has between seizing the property and publishing notice of sale. It just says "as soon as practicable." 26 U.S.C. § 6335(b). In this case, the government took about a year between the seizure and notice of sale, in order to determine how much the minimum bid should be. The government may need time to make this decision and others, such as whether to buy the property if no bidder offers the minimum. 26 U.S.C. § 6335(e)(1)(D). But the owner may believe that the government is taking more time

than necessary, and may exercise his right to request sale under 26 U.S.C. § 6335(f). At that point, the Secretary must proceed unless the exception in (f) applies. Subsection (f) regulates the time period between seizure and sale, but subsection (d) regulates the time period between advertisement of the auction and sale. The owner has no need to request sale within 60 days if the IRS has already advertised a sale to be held 10 to 40 days later under (b). The request provision of subsection (f) gives the owner a remedy if the IRS has seized the property, a long time has passed, yet the IRS has not given notice of when the sale will be held. We reject the argument that the owner of the property must exercise his right to demand a sale before the government need obey its mandatory statutory duty following notice.

AFFIRMED as to Zeitgeist; REVERSED as to Mr. Anderson. The district court should enter judgment in favor of Mr. Anderson in accord with this opinion.