USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1889

 BRUCE DZIURA AND ANN DZIURA,

 Plaintiffs, Appellants,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge]

 Before

 Selya, Stahl and Lipez,
 Circuit Judges.
 

 Gerald Glasser, with whom Kalill, Glasser and Associates was
on brief, for appellants.
 Sara Ann Ketchum, Attorney, Tax Division, United States
Department of Justice, with whom Loretta C. Argrett, Assistant
Attorney General, Donald K. Stern, United States Attorney, and
Jonathan S. Cohen, Attorney, Tax Division, were on brief, for
appellee.

February 26, 1999

 
 

 SELYA, Circuit Judge. This appeal pivots on the accrual
date for the two-year statute of limitations applicable to certain
actions against the Internal Revenue Service (IRS). We hold that
the taxpayers' cause of action accrued more than two years before
the date of suit. Consequently, we affirm the district court's
dismissal of the taxpayers' complaint.
 The events that gave rise to this action paint an
interesting picture. Bruce and Ann Dziura owed substantial back
taxes for 1989 and subsequent years. After some skirmishing (not
relevant here), the IRS seized two Andrew Wyeth paintings owned by
the Dziuras. It then prepared a so-called seizure and sale
worksheet on May 10, 1993, notified the taxpayers of its intent to
sell the paintings, and set minimum bid prices for each. The IRS
thereafter gave the statutorily required public notice, see 26
U.S.C. 6335(b), and attempted to auction both paintings on
September 23, 1993. One of them sold. The other which we shall
call "Painting No. 2" failed to achieve the minimum bid price
($60,000). The IRS did not return Painting No. 2 to the taxpayers.
 On December 6, 1993, the IRS notified the taxpayers that
it would again endeavor to auction Painting No. 2, this time
employing a minimum bid price of $30,000. The IRS kept the
painting until May 25, 1994, when it was sold at a second auction
for $30,000.
 The Internal Revenue Code specifically provides that if
the IRS, in the course of a tax collection effort, "recklessly or
intentionally disregards any provision of [the Code]," the affected
taxpayer(s) "may bring a civil action for damages against the
United States in a district court of the United States." Id. 
7433(a). Invoking this private right of action, the Dziuras sued
the United States on April 16, 1996, pointing out that applicable
law mandated restoration of the unsold painting to them after the
failed auction. See id. 6335(e)(D). The proposition on which
the taxpayers rely is legally sound. The law requires that, after
seizing a taxpayer's property and giving proper notice of an
intended sale, the IRS must sell what it has seized no "less than
10 days nor more than 40 days from the time of giving public
notice." Id. 6335(d). If not sold within that interval, the
property "shall be released to the owner." Id. 6335(e)(D).
 Congress intended this 40-day time limit to be
obligatory, subject only to a grant of authority to the Treasury
Secretary to provide by regulation for adjournments of a scheduled
sale, not to exceed one month in the aggregate. See id. 
6335(e)(2)(F); see also Anderson v. United States, 44 F.3d 795, 798
(9th Cir. 1995) (explaining that the Code "expressly limits such
delays to one month"). The relevant regulation tracks the Code and
establishes a one-month maximum for any delays. See 26 C.F.R. 
301.6335-1(c)(2). At the outside, this gives the IRS a window of
40 days plus one month for retention of a taxpayer's property.
 By retaining Painting No. 2 for some eight months (nearly
250 days) following the failed first auction, the IRS flouted the
clear command of section 6335(e)(D). See Anderson, 44 F.3d at 799
(explaining that "[w]hat [the government] cannot do, in the face of
the mandatory statutory command to 'release' the property, is hold
onto it"). Building on this foundation, the taxpayers insist that
they are entitled to damages. The rub is that all actions filed
under 26 U.S.C. 7433(a) "may be brought only within 2 years after
the date the right of action accrues." 26 U.S.C. 7433(d)(3). 
Because the taxpayers filed suit on April 16, 1996, their claim is
not timeous unless it accrued on or after April 16, 1994.
 At first blush, one would think that the cause of action
accrued on the occasion of the failed first sale (September 23,
1993), or, at the outside, when the maximum retention period
expired (as we calculate it, no later than November 23, 1993). 
Both of these dates are well beyond the accrual period. To avoid
this apparent time bar, the taxpayers asseverate that each day the
IRS illegally withheld Painting No. 2 from them constituted a new
violation of the statute, and, therefore, their cause of action did
not accrue until the date of the second auction (May 25, 1994),
when the government finally relinquished possession of Painting No.
2. The district court rejected this "continuing violation"
hypothesis, and so do we.
 The taxpayers' theory cannot carry the weight that they
load upon it. "Continuing violation" jurisprudence is drawn from
tort law. The doctrine is generally thought to be inapposite when
an injury is definite, readily discoverable, and accessible in the
sense that nothing impedes the injured party from seeking to
redress it. See Wilson v. Giesen, 956 F.2d 738, 743 (7th Cir.
1992); cf. Gilbert v. City of Cambridge, 932 F.2d 51, 58-59 (1st
Cir. 1991) (recognizing the vital distinction "between a continuing
act and a singular act that brings continuing consequences in its
wake"). Thus, absent a disability or other impediment to suit, the
applicable limitation period ordinarily will begin to run when an
injured party knows or should know the critical facts related to
his claim. See United States v. Kubrick, 444 U.S. 111, 122-24
(1979); Rodriguez v. Banco Central, 917 F.2d 664, 665-66 (1st Cir.
1990); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec.
Co., 840 F.2d 985, 995 (1st Cir. 1988). The implementing
regulations suggest that this general rule also applies to cases
under section 7433(a). See 26 C.F.R. 301.7433-1(g)(2)
(stipulating that a cause of action brought under section 7433(a)
"accrues when the taxpayer has had a reasonable opportunity to
discover all essential elements of a possible cause of action").
 The taxpayers' case cannot survive scrutiny under these
criteria. It seems highly likely that they knew (or, at least,
should have known) that Painting No. 2 did not sell at the first
auction. Even giving them the benefit of every doubt, they musthave known of this circumstance by December 6, 1993, when the IRS
notified them of the proposed second auction and suggested a new
minimum bid price. Similarly, the taxpayers like the IRS itself
 were chargeable with knowledge of the law, and thus with
knowledge that the IRS had a duty to return the unsold painting
promptly. And the taxpayers surely knew that Painting No. 2 had
not been returned within the mandated period. It follows
inexorably that, on any reading of the record, the taxpayers knew
the essential elements of their potential claim no later than
December 6, 1993. Because they waited more than two years from
that date before taking action, their suit was time-barred.
 We need go no further. To give credence to the
taxpayers' continuing violation theory would, in these
circumstances, scuttle a statute of limitations that Congress
purposefully wrote and turn it into a dead letter. We refuse to
take that path, for to do so "would wreak havoc with the law's
ability to grant repose and would be an open invitation to the
assertion of the stalest of claims." Paterson-Leitch, 840 F.2d at
995.

Affirmed.