126 T.C. No. 11


UNITED STATES TAX COURT


MICHAEL A. ZAPARA AND GINA A. ZAPARA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 9480-02L.                  Filed April 25, 2006.


        R moved for reconsideration of our Opinion
reported in Zapara v. Commissioner, 124 T.C. 223 (2005)
(Zapara I).  Finding that R failed to comply with Ps'
written request to liquidate Ps' levied-upon stock
accounts as required by sec. 6335(f), I.R.C., Zapara I
held that Ps were entitled to a credit for the value of
their seized stock as of the date by which it should
have been sold under the statute.  R contends that Ps'
citation of sec. 6335(f), I.R.C., on reply brief
constituted the untimely raising of a new issue and
that the evidence does not show that Ps made sufficient
written request pursuant to sec. 6335(f), I.R.C.  R
also contends that this Court lacks jurisdiction to
order the relief provided in Zapara I, which R
characterizes as an award of damages pursuant to sec.

---

        [*] This Opinion supplements our prior Opinion in Zapara v.
Commissioner, 124 T.C. 223 (2005) (Zapara I).

7433, I.R.C., which R contends is the exclusive remedy for a violation of sec. 6335(f), I.R.C.

Held: Ps' citation of sec. 6335(f), I.R.C., on reply brief did not raise a new issue but appealed to the correct application of law. Held, further, Ps' request to sell the stock complied with the requirements of sec. 6335(f), I.R.C. Held, further, the relief provided in Zapara I was not an award of damages but specific relief to provide Ps the credit to which they would have been entitled if R had complied with Ps' request to sell the stock. Held, further, by failing to adhere to the statutory mandate of sec. 6335(f), I.R.C., R frustrated Ps' ability to use the stock to defray their tax liabilities and increased their risk with respect to the stock; accordingly, R is treated as assuming the risk of loss with respect to the stock. United States v. Barlows, Inc., 767 F.2d 1098 (4th Cir. 1985), and United States v. Pittman, 449 F.2d 623 (7th Cir. 1971), followed; Stead v. United States, 419 F.3d 944 (9th Cir. 2005), distinguished. Held, further, sec. 7433, I.R.C., does not preclude the specific relief provided in Zapara I.

Michael A. Zapara and Gina A. Zapara, pro sese.

Deborah A. Butler, for respondent.

SUPPLEMENTAL OPINION

THORNTON, Judge: Respondent has moved for reconsideration of our prior Opinion in Zapara v. Commissioner, 124 T.C. 223 (2005) (Zapara I). In Zapara I, we held, among other things, that in this action pursuant to section 6330(d) to review respondent's jeopardy levy of certain stock accounts, petitioners are entitled to a credit for the value of their seized stock as of the date by which the stock should have been sold under section 6335(f); i.e., 60 days after petitioners requested

respondent in writing to sell the stock and apply the proceeds to their outstanding tax liabilities.[2]  We remanded the case to the Appeals Office for the purpose of establishing the value of the stock accounts as of 60 days after August 23, 2001.[3]

## Background

We adopt the findings of facts in Zapara I.  For convenience and clarity, we repeat here the facts necessary to understand the discussion that follows, and we supplement the facts as appropriate.

On June 1, 2000, respondent made a jeopardy levy with respect to certain nominee stock accounts held on petitioners' behalf.  Respondent's collection division took the position that these stock accounts had a value of approximately $1 million-- more than enough to pay off fully petitioners' then-outstanding 1993-98 tax liabilities of about $500,000.

By letter dated June 21, 2000, petitioners requested a section 6330 Appeals hearing with respect to the jeopardy levy. During the pendency of their Appeals Office case, petitioners became concerned about a possible decline in the value of their levied-upon stock (the stock).  Petitioners' then-representative,

---

[2] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure; all section references are to the Internal Revenue Code in effect for the years in issue.

[3] After receiving respondent's motion for reconsideration, we stayed our Order remanding this case to the Appeals Office.

Steven R. Mather (Mr. Mather), requested respondent's revenue officer to liquidate the stock accounts and apply the proceeds to petitioners' outstanding tax liabilities. The revenue officer directed Mr. Mather to get the Appeals officer's approval for the stock sale. Consequently, on August 23, 2001, Mr. Mather faxed to the Appeals officer a request for her approval of the stock sale. The fax (which is not in evidence) is described in the Appeals officer's contemporaneous case activity records as "asking me for a letter to say okay to release stock for sale".

On September 7, 2001, the Appeals officer called Mr. Mather about this request. An entry in the Appeals officer's case activity records dated September 7, 2001, states:

> Called rep [Mr. Mather]-re sale of stock that had been levied under jeopardy assessment although no move had been made to sell stock because of CDP hearing. Per rep-tp [taxpayer] wants to sell stock while it still has value and have proceeds appkied [sic] to tax. Told rep that I would like him to put his request in writing and send to me w/cc to RO [revenue officer] since he is still working with the RO. He said he will do. Informed rep that I was going to talk to RO about stock sale-he was okay with me doing that-rep had already talked to him about too [sic].

That same day, the Appeals officer called the revenue officer, who indicated that petitioners had "a lot" of shares of stock that were not widely traded and that he wanted to determine the fair market value and have all proceeds applied to petitioners' deficiency. The Appeals officer's contemporaneous case activity records state that this "is what I also want".

That same day, the Appeals officer made inquiries of other IRS personnel about a possible stock sale and was advised that "if FMV [fair market value] is determinate we can sell, but if FMV is not determinate, then per IRM [Internal Revenue Manual] we have to sell at auction".

In an entry in her case activity records dated September 12, 2001 (1 day after the terrorist attacks of September 11, 2001), the Appeals officer indicated that she would "continue to research/work with rep on possible sale of stock he has requested to happen".

A September 13, 2001, entry in the Appeals officer's case activity records states: "rep called-wants to sell stock-I previously talked to RO-he has no problems with it-have to determine FMV-rep to submit info to me in writing-and to RO who will verify and let me know." An entry dated October 11, 2001, states: "Need to call rep-re status of Appeal * * * funds have been levied under jeopardy levy-tp wanted to sell them while they still had value-RO does not object-will oversee-then 9-11 attack-market fell-therefore, believe sale of stock has not happened." An entry dated January 22, 2002, repeats this language verbatim. Finally, an entry dated February 12, 2002, indicates that the Appeals officer called Revenue Agent F. Stevens who "stated he did not know status of case, and that rep did not provide stock

information to him to be able to sell stock to pay tax.

Apparently it may not have been worth much."[4]

The Appeals officer's Appeals Case Memo (undated, but

attached to Form 5402-c, Appeals Transmittal and Case Memo,

signed May 7, 2002) states in pertinent part:

> The representative indicated in discussions with the
> Appeals Officer that his goal in resolving the issue in
> this case was to sell the stock seized by the IRS and
> apply it to the deficiencies owed, in addition to
> getting the audit assessments reduced on appeal in
> District Court.  He believed if this was done, the
> amount owed would be resolved and possibly full paid
> through the stock sale.
>
> The request to sell the stock was made during
> consideration of this case.  The taxpayers believed
> that the stock would become worthless while the Appeal
> was pending, due to the downturn in the market.  The
> taxpayers wanted to liquidate the stock so that some
> credit could be applied to the balance due IRS.  The
> taxpayers contended that while [sic] the Revenue
> officer seized the stock, the value of the stock (if
> liquidated) was greater than the balance of the
> liabilities and that it had declined to the point where
> the value is only a fraction of the balance due.  The
> representative was supposed to address this request in
> writing to Appeals in order for consideration [sic] to
> sell the stock.  The Revenue Officer was in agreement
> to the stock sale if it was sold at fair market value,
> and all proceeds were applied to the deficiencies owed.
> No request was received in writing from the
> representative as requested.

On May 8, 2002, a Notice of Determination Concerning

Collection Action(s) Under Section 6320 and/or 6330 (the notice

of determination) was issued to petitioners.  In the notice

of determination, the Appeals Office determined that petitioners

---

[4] The record does not otherwise reveal the role of Revenue
Agent F. Stevens in this case.

were precluded from challenging their underlying tax liabilities for 1993, 1994, and 1995, and that respondent's jeopardy levy would not be withdrawn. The notice of determination does not expressly address petitioners' request to sell the stock.

## Discussion

The granting of a motion for reconsideration rests within the Court's discretion. Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998); see Lucky Stores, Inc. v. Commissioner, T.C. Memo. 1997-70, affd. 153 F.3d 964 (9th Cir. 1998). A motion for reconsideration will be denied absent a showing of unusual circumstances or substantial error. Estate of Quick v. Commissioner, supra; see Alexander v. Commissioner, 95 T.C. 467, 469 (1990), affd. without published opinion sub nom. Stell v. Commissioner, 999 F.2d 544 (9th Cir. 1993); Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986).

## Whether Application of Section 6335(f) Was an Untimely New Issue

Petitioners cited section 6335(f) only in their reply brief. Respondent suggests that he therefore lacked adequate opportunity to present evidence and legal argument regarding the application of section 6335(f). We disagree. Before, during, and after trial, petitioners repeatedly raised the claim that respondent had wrongly refused to comply with their request to liquidate the seized stock accounts and to give them appropriate credit.[5]

---

[5] As respondent notes in his motion for reconsideration,
(continued...)

Clearly, respondent had fair warning of this issue. In fact, respondent's pretrial memorandum--submitted to the Court about 2 weeks before trial--specifically addressed this issue, although without reference to section 6335 or any other legal authority. Similarly, in his opening and reply briefs, respondent addressed this issue (again without citation to any legal authority), arguing that the Appeals officer properly refused to comply with petitioners' request to sell the stock because petitioners failed to submit certain information in writing as requested by the Appeals officer.

We believe that petitioners' citation to section 6335(f) on reply brief does not raise a new issue but appeals to the application of the correct law, based upon the record presented and in support of a claim of which respondent was well aware. "Neither party can avoid the application of the correct law to the facts of the case by failing to plead or argue it. That is the province of the Court." Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 126 (1987) (Körner, J., concurring), (citing Park Place, Inc. v. Commissioner, 57 T.C. 767, 769

---

[5](...continued) petitioners did not expressly raise this issue in their petition. Nevertheless, because at trial respondent (having previously addressed the issue in his pretrial memorandum) acquiesced in the introduction of evidence on this issue without objection, it was tried with at least the implied consent of respondent. Accordingly, we treat the issue in all respects as if it had been raised in the pleadings. See Rule 41(b); LeFever v. Commissioner, 103 T.C. 525, 538-539 (1994), affd. 100 F.3d 778 (10th Cir. 1996).

(1972)); cf. <u>Ware v. Commissioner</u>, 92 T.C. 1267 (1989) (holding that the Commissioner was not precluded from raising for the first time on brief the applicability of section 751), affd. 906 F.2d 62, 65-66 (2d Cir. 1990). Respondent was no less well situated than these pro sese petitioners to be aware of the relevant statutory provisions. Respondent had adequate opportunity to present pertinent evidence at trial regarding petitioners' claim and the defense thereto that he had asserted even before trial and that constitutes a mainspring of his motion for reconsideration; i.e., that petitioners failed to make an adequate written request for the Appeals officer to sell the stock.[6]

In his motion for reconsideration, although he complains that we should have held additional evidentiary hearings on the application of section 6335(f), respondent has not expressly requested that we now hold additional evidentiary hearings or described what additional evidence he might now wish to offer.[7]

---

[6] We note that in his pretrial memorandum, respondent indicated that he expected to call various witnesses, including the Appeals officer, to testify. At trial, however, respondent called no witnesses and offered into evidence only selective portions of the administrative record.

[7] Similarly, respondent has not expressly requested the opportunity for additional briefing regarding the application of sec. 6635(f). In his 16-page memorandum of law in support of motion for reconsideration of Opinion, respondent has included extensive legal argument regarding this matter. Petitioners have filed a response. We conclude that additional briefing would not be helpful to the Court.

The record contains sufficient facts to permit us to decide this case based on the application of section 6335(f). Particularly in light of our conclusion that petitioners have not raised a new issue, we conclude that additional evidentiary proceedings are unnecessary.

Whether Petitioners Made Sufficient Request To Sell the Stock

In his motion for reconsideration, respondent argues that the evidence does not support the finding in Zapara I that the August 23, 2001, fax met the requirements of sec. 301.6335-1(d)(2)(ii), Proced. & Admin. Regs. In Zapara I, we acknowledged that because the parties did not stipulate the complete administrative record or offer the August 23, 2001, fax into evidence, "we are unable to determine whether the fax contained all the information specified" in the applicable regulations. Zapara v. Commissioner, 124 T.C. at 240 n.12. We concluded, however: "Considering the Appeals officer's subsequent response, we believe that the fax was sufficient for purposes of sec. 6335(f)." Id. We reached this conclusion on the basis of all the evidence in the administrative record that was presented to the Court. That evidence convinces us (as discussed in greater detail infra), that the Appeals officer treated the August 23, 2001, fax as a request to sell the stock; that she acquiesced in the sale of the stock, subject to petitioners' submitting information about the stock's fair market value--information that we concluded is not required by the applicable section 6335(f)

regulations; that she ultimately relegated responsibility for the stock sale to the revenue officer whose involvement with petitioners' request predated the August 23, 2001, fax; and that for a period of some months in late 2001 and early 2002, the Appeals officer was uncertain as to whether or not the stock sale had taken place.

Although the administrative record does not show that the Appeals officer expressly determined that the August 23, 2001, fax met the requirements of the section 6335(f) regulations, it also does not show that she expressly made any contrary determination.[8]  In fact, the administrative record does not contain the slightest indication that the Appeals officer was even aware of, much less based her actions on, the directives of section 6335 or the regulations thereunder.  This circumstance has complicated our task of evaluating the Appeals officer's response to petitioners' request to sell the stock, but it does not relieve respondent of his duty to comply with the directives of section 6335, which we briefly review below.

Section 6335 requires the Secretary, "as soon as practicable" after seizing property, to publish notice of sale. Sec. 6335(b).  The sale must occur no more than 40 days after such public notice.  Sec. 6335(d).  If the owner of the levied-upon property believes the IRS is taking too long to publish

_____

[8] The final determination contains no reference to this issue.

notice of sale, section 6335(f) provides a remedy.  See <u>Anderson v. United States</u>, 44 F.3d 795, 800 (9th Cir. 1995).  The owner may request the sale to take place within 60 days, and the Secretary "shall comply with such request", unless the Secretary determines (and notifies the owner within the requisite 60 days) that the sale would not be in the best interests of the United States.  Sec. 6335(f).  The Federal courts "have always required strict compliance by the government with § 6335".  <u>Anderson v. United States</u>, <u>supra</u> at 800.

The regulations under section 6335(f) prescribe the form in which the section 6335(f) request is to be made.  We have no occasion here to question respondent's ability to insist upon strict adherence to those regulatory requirements in the first instance when a taxpayer requests respondent to sell seized property.  But where, as in this case, respondent's agents and officers themselves appeared unaware of either the statutory or regulatory requirements under section 6335(f), and received and processed petitioners' request to sell the seized property, insisting only upon conditions that lie outside the regulatory requirements, and the facts do not indicate that respondent otherwise lacked the information necessary to comply with petitioners' request, respondent cannot be heard to complain in hindsight that petitioners' request was insufficient.

Respondent contends that the Appeals officer did not abuse her discretion in "finding that petitioners did not make a

written request to sell the stock".[9]  It is undisputed, however,

that petitioners did make a written request on August 23, 2001,

in the fax from Mr. Mather to the Appeals officer.  On the basis

of all the evidence, we have concluded that the fax constituted a

request to sell the stock, consistent with the manner in which

the Appeals officer treated it.[10]  Consequently, if we were to

---

[9] This Court has held that in exercising judicial review pursuant to sec. 6330(d), we review respondent's determinations de novo where the validity of the underlying tax liability is at issue but otherwise review respondent's determinations for abuse of discretion.  See, e.g., Sego v. Commissioner, 114 T.C. 604, 610 (2000).  At least one court has held that in a sec. 6330 collection case, procedural challenges, as opposed to challenges to the correctness of the administrative determination, should be reviewed de novo rather than for abuse of discretion.  Cox v. United States, 345 F. Supp. 2d 1218, 1220 (W.D. Okla. 2004).  The instant case presents a mix of a sec. 6335(f) procedural challenge and a correctness challenge as to underlying factual matters.  The standard of review is further complicated by the fact that the final determination does not expressly address petitioners' request to sell the stock.  Because we would conclude that respondent erred in failing to comply with petitioners' request even under the more restrictive abuse of discretion standard, we need not and do not decide whether a de novo standard of review applies to the procedural challenge presented by this case.

[10] In a footnote to his legal memorandum in support of his motion for reconsideration, respondent quibbles over whether the fax represented an "express request by petitioners to sell the stock", postulating that it "can also be construed as a request to release the levy on the stock or to release the stock back to petitioners".  The administrative record clearly shows, however, that the Appeals officer treated the fax as a request by petitioners to sell the stock.  In fact, her first documented action after receiving the fax was to call Mr. Mather "re sale of stock that had been levied".  Immediately thereafter, the Appeals officer spoke to the revenue officer and other IRS personnel about a possible sale of petitioners' stock.  The following week, she made a note in her case activity records that she would "continue to research/work with rep on possible sale of stock he

(continued...)

agree with respondent that the Appeals officer found "that there was no written request submitted by the taxpayers for the sale of the stock", we would conclude that such a finding was an abuse of discretion, as being without sound basis in fact.

Respondent leans heavily on a statement in the Appeals officer's Appeals Case Memo:  "No request was received in writing from the representative as requested".  The administrative record shows, however, that what the Appeals officer ultimately requested from Mr. Mather, and conditioned the sale of the stock upon, was information in writing as to the fair market value of the stock.[11]  This conclusion is consistent with the context of

---

[10](...continued)
has requested to happen".  A day later, she spoke by phone to Mr. Mather, who, according to her notes, "wants to sell stock".  The Appeals officer's case activity notes indicate that she would continue to work with Mr. Mather, "on possible sale of stock he has requested to happen".  In her Appeals Case Memo, the Appeals officer states:  "The request to sell the stock was made during the consideration of this case."

[11] According to a Sept. 7, 2001, entry in her case activity records, the Appeals officer, in her first telephone conversation with Mr. Mather after receiving the Aug. 23, 2001, fax, told him that she "would like" him to put his request "in writing", with a copy to the revenue officer.  According to the Appeals officer's own characterization of it, then, this directive was precatory; there is no indication that the Appeals officer made her consideration of Mr. Mather's faxed request (which was necessarily in writing) conditional on his submitting an additional written request.  To the contrary, the case activity records show that immediately after speaking with Mr. Mather, the Appeals officer spoke with the revenue officer, who was not only already familiar with Mr. Mather's request but acquiesced in it, subject to ascertaining the stock's fair market value.  Other IRS personnel to whom she spoke reiterated concerns about determining the stock's fair market value.

(continued...)

the Appeals officer's complete discussion of this matter in the Appeals Case Memo and with the parties' fact stipulations, which state in pertinent part:

> 33. During the course of petitioners' collection due process case, petitioners' representative raised the following issues: * * * (3) that petitioners wished to sell stock in the possession of a Revenue Officer and apply the proceeds to their outstanding tax liabilities * * *.

> 34. With respect to the sale of stock, the Appeals Officer informed petitioners' representative

---

[11](...continued)

On Sept. 13, 2001 (less than a week after her prior conversation with Mr. Mather), the Appeals officer spoke with Mr. Mather again. This time, her request was for information about the fair market value of the stock; this information was to be submitted to the revenue officer for his verification. After this, the Appeals officer seems to have relegated the matter of the stock sale to the revenue officer and to a revenue agent.

In identical entries in her case activity records dated Oct. 11, 2001, and Jan. 22, 2002, the Appeals officer noted that petitioners wished to sell their levied-upon stock and that the revenue officer "does not object-will oversee-then 9-11 attack-market fell-therefore, believe sale of stock has not happened". (Emphasis added.) The final germane entry is dated Feb. 12, 2002, and indicates that the Appeals officer called Revenue Agent F. Stevens (otherwise unidentified in the record), who stated: "he did not know status of case, and that rep did not provide stock information to him to be able to sell stock to pay tax. Apparently it may not have been worth much.". These entries suggest several things: Namely, that the Appeals officer was aware that petitioners' request to sell the stock had been (and possibly still was) under active consideration; that the stock sale was held up because of continued lack of information about its fair market value and not because of any question as to whether petitioners had otherwise made sufficient written request; and that for a period of some months between late 2001 and early 2002 the Appeals officer, having relegated responsibility for the stock sale to the revenue officer and the revenue agent, was uncertain as to whether the sale might have already occurred.

> that he needed to submit information regarding the stock, such as the fair market value, in writing and that a revenue officer would make a determination regarding the sale of the stock. Petitioners did not submit the required information <u>regarding the fair market value of the stock</u>. [Emphasis added.]

As we discussed in Zapara I, neither section 6335(f) nor the regulations thereunder require the owner to include information about fair market value in a request to sell seized property. Accordingly, it was an abuse of discretion for the Appeals officer to insist on petitioners' providing such information before complying with the statutory mandate of section 6335(f) to comply with the request to sell the seized property.

In his motion for reconsideration, respondent argues that petitioners failed to identify or describe the stock contained in the seized stock accounts and so did not satisfy the requirements of section 301.6335-1(d)(2), Proced. & Admin. Regs. As pertinent to this line of argument, the regulations require a request for sale of seized property to contain: "A description of the seized property that is the subject of the request". Sec. 301.6335-1(d)(2)(ii)(B), Proced. & Admin. Regs. In the instant case, the seized property was three stock accounts at Travis Morgan Securities, Inc., as described in the notices of levy upon which this case is based and which are part of the administrative record. The notices of levy gave the Commissioner the rights to all the property in the stock accounts and created a custodial

relationship between the IRS and Travis Morgan Securities, Inc., such that the stock came into the constructive possession of the Government.  See United States v. Natl. Bank of Commerce, 472 U.S. 713, 720 (1985).[12]  Accordingly, we do not believe that respondent lacked the ability to know the identity of the stocks in the levied-upon stock accounts as necessary to comply with petitioners' request to sell the stock.  More to the point, the administrative record does not suggest that the Appeals officer was ever in doubt as to the identity of the seized property that was the subject of petitioners' request, that the Appeals officer ever expressly requested further information in this regard (other than as might be incidental to her request for fair market value information), or that any failure by petitioners to provide such information was the reason for respondent's failure to comply with petitioners' request to sell the stock.

In his memorandum in support of his motion for reconsideration, respondent contends that we should remand this case to the Appeals officer "for a determination as to whether petitioners' request that respondent sell the stock was sufficient" under the section 6335(f) regulations.  In light of the foregoing discussion, we do not believe it is necessary, productive, or appropriate to remand this case to the Appeals officer to reconsider, in hindsight, her compliance with section

---

[12] In their stipulations of fact, the parties have described the stock as being "in the possession of a Revenue Officer".

6335(f). See <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 189 (2001). We believe that the highly predictable outcome of such a remand would only necessitate further judicial review at a later date.

<u>Whether This Court Has Authority To Grant Petitioners Relief</u>

In Zapara I, we held that because respondent neither complied with petitioners' request to sell the stock nor determined and notified petitioners that selling the stock would not be in the United States' best interests, "petitioners are entitled to a credit for the value of the stock accounts as of the date by which the stocks should have been sold under section 6335(f); i.e., 60 days from August 23, 2001." <u>Zapara v. Commissioner</u>, 124 T.C. at 242. Citing <u>United States v. Barlows, Inc.</u>, 53 Bankr. 986 (E.D. Va. 1984), affd. 767 F.2d 1098 (4th Cir. 1985), we held that respondent could not claim any interest or accrue penalties on this credited amount after such date. <u>Id.</u> We noted that if the value of the stock presently exceeds its value as of 60 days from such date, then respondent should sell the stock and give petitioners appropriate credit. <u>Id.</u> n.15.

In his motion for reconsideration, respondent contends that this Court lacked jurisdiction to order such relief, characterizing it as an award of "damages":

> Petitioners' request for a credit on their taxes due to the delayed sale of the stock caused by respondent's alleged disregard of section 6335(f) is a claim for damages. Pursuant to section 7433(a), the United States District Court may only grant relief because of respondent's reckless, intentional, or negligent disregard of the Internal Revenue Code or

regulations.  Section 7433(a) is the exclusive remedy for a taxpayer seeking damages against the United States for such conduct.

Respondent is correct that this Court lacks jurisdiction to award damages pursuant to section 7433.  See <u>Williams v. Commissioner</u>, T.C. Memo. 2005-94; <u>Chocallo v. Commissioner</u>, T.C. Memo. 2004-152.  Respondent is incorrect, however, that we have awarded damages to petitioners pursuant to section 7433.  Rather, we have provided petitioners specific relief.  The distinction between damages and specific relief has been explained thus: "'Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'"  <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 895 (1988) (quoting <u>Md. Dept. of Human Res. v. Dept. of Health and Human Servs.</u>, 763 F.2d 1441, 1446 n.21 (D.C. Cir. 1985)).  In Zapara I, we did not award petitioners damages to substitute for any suffered loss.  In fact, we did not endeavor to ascertain whether petitioners have suffered any loss.  Instead, we ordered specific relief that attempts to give petitioners the credit to which they would have been entitled had respondent complied with their request to sell the stock as required by section 6335(f).[13]

_____

[13] Our holding in Zapara I requires that if the value of the stock is presently no greater than it was as of the last date it should have been sold under sec. 6335(f), petitioners are entitled to a credit against their tax liability for the value of the stock as of that date; otherwise, respondent is to sell the
                                        (continued...)

We have provided petitioners this specific relief in the exercise of this Court's inherent equitable powers.  As the United States Court of Appeals for the Ninth Circuit (to which this case is appealable) has observed, the Tax Court possesses "within its statutorily defined sphere * * * the authority to apply the full range of equitable principles generally granted to courts that possess judicial powers."  Estate of Branson v. Commissioner, 264 F.3d 904, 908 (9th Cir. 2001), affg. 113 T.C. 6 (1999); see Estate of Ashman v. Commissioner, 231 F.3d 541, 545 (9th Cir. 2000) ("Even if the tax court does not have far-reaching general equitable powers, it can apply * * * equitable powers within its own jurisdictional competence."), affg. T.C. Memo. 1998-145; Buchine v. Commissioner, 20 F.3d 173, 178 (5th Cir. 1994) (concluding that the Tax Court is empowered to apply the equitable principle of reformation to a case over which it already has jurisdiction), affg. T.C. Memo. 1992-36; Chocallo v. Commissioner, supra (requiring the Commissioner to return to the taxpayer, with interest, the amount collected by levy where the levy had been made without following the hearing procedures required under section 6330(b)).

Clearly, this case falls within this Court's "statutorily defined sphere".  Estate of Branson v. Commissioner, supra.

---

[13](...continued)
stock and give petitioners appropriate credit.  Either contingency results in a credit to petitioners equal to the value of the stock rather than an award for any suffered loss.

Section 6330(d) broadly gives the Tax Court jurisdiction "with respect to such matter" as constitutes the subject of the taxpayer's appeal from an Appeals Office determination, at least so long as the underlying tax liability is of a type over which the Tax Court has jurisdiction (as it is in the instant case). This jurisdictional grant encompasses review of a jeopardy levy, such is at issue here. See <u>Dorn v. Commissioner</u>, 119 T.C. 356 (2002). In the exercise of this jurisdiction, this Court has the authority to review for error respondent's compliance with petitioners' request to sell the seized stock, inasmuch as this matter is properly part of the subject of petitioners' appeal from the administrative determination. It would be anomalous if this Court's authority were limited to finding such error and did not extend to redressing it.[14]

<u>Whether the Equitable Remedy Provided in Zapara I Was Appropriate</u>

In Zapara I, we treated respondent as having assumed the risk of loss with respect to the stock by failing to adhere to

---

[14] This Court has recognized limits to its ability to provide relief in sec. 6330 collection cases. For instance, in <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. 1 (2006), this Court held that it lacks jurisdiction in a sec. 6330 proceeding to determine an overpayment or to order a refund or credit of taxes paid. The decision in <u>Greene-Thapedi</u> was predicated partly on a long jurisdictional history that militated against this Court's assuming refund jurisdiction without express legislative provision and partly on the absence in sec. 6330 of limitations corresponding to the limitations in sec. 6511 on claims for credits or refunds of overpayments of tax. Such concerns are not presented by the instant case, which does not involve any claim of an overpayment of taxes and does not involve any refund or credit with respect to an overpayment of taxes.

the section 6335(f) mandate to comply with petitioners' request to sell it.  In evaluating the circumstances under which the Government should be considered to assume the risk of loss with respect to seized property, three appellate court cases are especially instructive.  Two of these cases, United States v. Barlows, Inc., 767 F.2d 1098 (4th Cir. 1985), and United States v. Pittman, 449 F.2d 623 (7th Cir. 1971), were discussed in Zapara I.  In these two cases, the Government was held to have assumed the risk of loss with respect to seized property; the taxpayers were afforded the same type of equitable relief that we have provided petitioners.  The third case, Stead v. United States, 419 F.3d 944 (9th Cir. 2005), decided after our opinion in Zapara I (and after the filing of respondent's motion for reconsideration), concluded that the risk of loss did not pass to the Government.  A comparison of the facts and analyses of these three cases convinces us that the result in the instant case properly aligns with the result in Barlows and Pittman.

The courts in Barlows and Pittman held that the Government assumed the risk of loss with respect to levied-upon properties (an account receivable in Barlows, real estate in Pittman) where it exercised dominion and control over the properties, having failed to publish notice of sale "as soon as practicable", as required by section 6335(b).  In each case, the Government's actions impeded the taxpayer's ability to use the levied-upon property to defray outstanding tax liabilities and increased the

taxpayer's risk with respect to the levied-upon property.[15]  In each case, the court held that the taxpayer was entitled to equitable relief in the form of credit against tax liability for the value of the property seized.

Because current section 6335(f) had not yet been enacted when Barlows and Pittman were decided, those cases necessarily did not consider the effect of the Government's failure to adhere to the mandate of section 6335(f) to comply with the owner's request to sell the seized property (absent a determination and notification to the owner that the sale would not be in the best interests of the United States).  Confronted with that issue in this case, we have concluded that the consequences to petitioners

---

[15] The Court of Appeals in United States v. Pittman, 449 F.2d 623, 627 (7th Cir. 1971), noted that had the Government followed the requirements of sec. 6335(b) to advertise and sell the seized real estate, there would have been no question that the taxpayer's liability would have been reduced to reflect the seizure.  As the court observed, the Government "did not follow through and sell the property, as required by the Code.  Instead, it held it and permitted it to deteriorate in value".  Id. at 628.  Consequently, the court concluded:  "We do not conceive that the error of the Government and any loss resulting from it are attributable to the taxpayer."  Id.

The Court of Appeals in United States v. Barlows, Inc., 767 F.2d 1098 (4th Cir. 1985), affirmed on the basis of the District Court's opinion, which stated in part:

> the IRS assumed the risk of * * * [the third-party debtor's] default when the IRS acted inconsistently with the statute [sec. 6335(b)], thereby increasing Barlows' risk in the property and precluding Barlows from proceeding against the account itself. [United States v. Barlows, Inc., 53 Bankr. 986, 989 (E.D. Va. 1984), affd. 767 F.2d 1098 (4th Cir. 1985).]

of respondent's failure to comply with section 6335(f) are sufficiently similar to the consequences of the Government's wrongful actions in Barlows and Pittman as to demand an equivalent remedy, for reasons explained in more detail below.

As previously noted, the very object of section 6335(f) is to provide a remedy when the taxpayer believes the IRS is taking too long to publish notice of sale. Anderson v. United States, 44 F.3d at 800. By failing to comply with the mandate of section 6335(f), respondent thwarted petitioners' statutory remedy. Respondent's wrongful action was, in its consequences to petitioners, tantamount to respondent's exercising dominion and control while failing to adhere to section 6335(b), as in Barlows and Pittman. As in Barlows and Pittman, respondent's wrongful action frustrated petitioners' ability to use the levied-upon property to defray their tax liabilities and increased petitioners' risk with respect to the levied-upon property. In these circumstances, we do not believe it is dispositive whether respondent's wrongful action might be said to have constituted the exercise of dominion and control.[16] Here, as in Barlows and Pittman, any loss resulting from respondent's wrongful action is not attributable to petitioners and should, we believe, be assumed by respondent. Accordingly, we have followed Barlows and

---

[16] In Zapara I, we concluded that the record did not establish that respondent had exercised dominion and control over petitioners' seized stocks. Zapara v. Commissioner, 124 T.C. 223, 237 (2005).

Pittman in assigning the risk of loss to respondent with respect to the seized property and in providing petitioners corresponding equitable relief.

By contrast, in Stead v. United States, supra, the IRS did nothing to assume the risk of loss with respect to the levied-upon property. Unlike the instant case, Stead involved neither a taxpayer's request to sell levied-upon property nor the application of section 6335(f). In Stead, the IRS had levied upon a bank account controlled by the taxpayers. Subsequently, the levied-upon funds disappeared from the bank account but were neither returned to the taxpayers nor remitted to the IRS. Petitioners paid their outstanding tax liability and filed a claim for refund, arguing in essence that they had paid their taxes twice. Affirming summary judgment for the Government, the Court of Appeals for the Ninth Circuit cited Zapara I with apparent approval for the proposition that "Under most circumstances, a tax is 'paid' when the Government becomes the owner of the property". Stead v. United States, 419 F.3d at 948.[17] Citing Barlows and Pittman, the Court of Appeals

_____

[17] The Court of Appeals for the Ninth Circuit did not otherwise address the analysis or holdings of Zapara I.

acknowledged that the risk of loss might pass to the Government
if it exerted dominion and control over the levied property.[18]
Id. Because the Government had taken no action with respect to
the taxpayers' bank account aside from levying upon the funds
within it, however, the Court of Appeals held that the risk of
loss did not pass to the Government. Id. at 949.

In confirming that the risk of loss might pass to the
Government as a consequence of its exercising dominion and
control over seized property, the Court of Appeals in Stead did
not foreclose the possibility that the risk of loss might pass to
the Government for other reasons. To the contrary, in dicta, the
Court of Appeals suggested that the risk of loss might have
passed to the Government if the taxpayers had shown that the

---

[18] The Court of Appeals stated:

> There are situations in which the government
> exerts such extensive dominion and control over a
> levied property that it should bear the risk of any
> loss. See, e.g., United States v. Pittman, 449 F.2d
> 623, 628 (7th Cir. 1971)* * *; United States v.
> Barlows, Inc., 767 F.2d 1098, 1100 * * * . A levy,
> without more, is not sufficient to transfer the risk of
> loss to the government. Unless the government takes
> affirmative action to administer the levied upon
> property as it did in Pittman and Barlows, Inc., a tax
> levy does not in and of itself equate to payment of tax
> liability. * * * [Stead v. United States, 419 F.3d
> 944, 948-949 (9th Cir. 2005).]

Government acted with "affirmative negligence" in serving as custodian of the levied-upon property.[19]  Id. at 948.

Whether Section 7433 Is the Exclusive Remedy

By failing to comply with section 6335(f), respondent denied petitioners the benefit of the statutory remedy whereby they sought to protect themselves against future losses in the stock's value.  Respondent suggests, however, that because section 6335(f) specifies no remedy for respondent's noncompliance, there can be no remedy other than as might arise from a civil cause of

_____

[19] Citing United States v. Whiting Pools, Inc., 462 U.S. 198 (1983), the Court of Appeals analogized the remedies available to the IRS under secs. 6331 and 6332 to the remedies available to private secured creditors under Article 9 of the Uniform Commercial Code.  Stead v. United States, 419 F.3d at 948.  The Court of Appeals noted that U.C.C. sec. 9-207(a) requires a secured creditor in possession to use "reasonable care in serving as custodian of the property" and suggested that the taxpayers might have been entitled to credit against their tax liability if they could have shown "affirmative negligence" by the Government in this regard.  Id.

The Court of Appeals in Stead had no occasion to consider the application of this standard of reasonable care to a situation, like the instant case, where the debtor demands the secured party to liquidate the collateral.  We note, however, that pursuant to U.C.C. sec. 9-207(a):  "If the secured party negligently fails to liquidate the collateral after a demand to that effect has been made, the secured party will be held liable for the resultant loss without regard to the presence in the contract of a clause exempting the secured party from liability." 9 Anderson, Uniform Commercial Code, sec. 9-207:10, at 11 (3d ed. 1999).  Because we have grounded the specific relief in Zapara I on respondent's violation of sec. 6335(f), we need not and do not decide whether respondent's employees acted negligently in this regard or whether such negligent conduct might constitute a separate ground for providing petitioners credit against their tax liability.

action for damages pursuant to section 7433.  For the reasons discussed below, we disagree.

Section 7433(a) provides that (except as provided in section 7432) a civil action brought by a taxpayer against the United States "shall be the exclusive remedy <u>for recovering damages</u> resulting from" unauthorized collection actions.  (Emphasis added.)  Respondent apparently would have us read the underscored language out of the statute.  Fundamental principles of statutory construction preclude us from reading the statute in such a way as to render statutory language mere surplusage.  See, e.g., <u>United States v. Campos-Serrano</u>, 404 U.S. 293, 301 (1971).

Moreover, incongruities between the mandate of section 6335(f) and the scope of the section 7433 cause of action for damages suggest that section 7433 was not intended to occupy or encroach upon the field of available judicial remedies for respondent's violation of section 6335(f).  Most notably, section 7433 predicates a cause of action for damages on culpable conduct by the Commissioner's officers or employees; i.e., negligent, reckless, or intentional disregard of statutory or regulatory provisions.  The statutory mandate of section 6335(f), on the other hand, does not turn on culpability or the lack thereof.  A violation of section 6335(f) (arising, for example, from a legal misunderstanding by respondent's employees) is no less a violation because it is not negligent, reckless, or intentional; yet, under respondent's view (which we cannot characterize as

disinterested) such a violation apparently would be without remedy, either in the form of damages or specific relief.[20]

The provisions currently found in sections 6335(f) and 7433 were enacted as part of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342. Both provisions are included in a set of provisions known as the "Taxpayer Bill of Rights" intended, as the name connotes, to "promote and protect taxpayer rights". S. Rept. 100-309, at 1 (1988). In light of these broader purposes of the Taxpayer Bill of Rights and the specific remedial nature of section 6335(f), we do not believe that Congress intended section 7433 to displace equitable remedies for violations of section 6335(f).[21]

In a footnote to his memorandum in support of his motion for reconsideration, respondent suggests that he is not authorized to credit petitioners' account as contemplated in Zapara I. Citing section 6402(a), respondent states that he "is not generally

---

[20] Similarly, there are other gaps in the scheme of relief under sec. 7433, insofar as it might provide a remedy for a violation of sec. 6335(f). For instance, whereas sec. 6335(f) entitles the "owner" of levied-upon property (who may or may not be the same person as the taxpayer) to request sale of the property, sec. 7433(a) limits a cause of action for damages to the "taxpayer". Furthermore, the damages available under sec. 7433 are capped at $100,000 for negligent disregard of law and $1,000,000 for reckless or intentional disregard of law.

[21] The legislative history of sec. 7433 gives the "Reasons for change" in toto as follows: "The committee believes that taxpayers should be provided a civil cause of action to compensate them for damages that arise out of unlawful actions or inaction of IRS employees that occur during the determination or collection of Federal taxes." S. Rept. 100-309, at 15-16 (1988).

authorized to credit a taxpayer's account without an overpayment".  Section 6402(a) merely provides a procedure whereby respondent may credit a taxpayer's overpayment against an outstanding tax liability before refunding the balance.  Neither section 6402(a) nor any other provision of law forecloses respondent from giving petitioners proper credit as ordered by this Court in the exercise of its authority pursuant to section 6330(d).[22]

To reflect the foregoing,

An order will be issued
denying respondent's motion
for reconsideration.

---

[22] The amount, if any, of credit due to petitioners will depend upon findings this Court has ordered respondent's Appeals Office to make upon remand.